OPINION OF THE COURT
Simons, J.
Defendant appeals from an order of the Appellate Division which affirmed a judgment entered after a jury trial *273 convicting him of murder in the second degree (Penal Law, § 125.25, subd 2 [depraved mind murder]) and two counts of assault in the first degree (Penal Law, § 120.10, subd 1). The charges arose from a barroom incident in which defendant shot and killed one man and seriously injured two others. He alleges that the evidence was insufficient to support the murder conviction and that the trial court erred in refusing to instruct the jury that it could consider intoxication evidence to negate an element of the crime of depraved mind murder. He also assigns error in rulings during the examination and cross-examination of his expert witness, claiming that the court limited his right to develop psychiatric evidence on the effect of alcohol on his conduct.
 There should be an affirmance. The evidence supports the conviction and the court’s instructions were correct. Moreover, the court did not abuse its discretion in its rulings during the examination of defendant’s expert (cf. People v Cronin, 60 NY2d 430).
The shootings occurred about 12:30 a.m. on January 15, 1977 in a crowded barroom in downtown Rochester. The evidence established that defendant and a friend, Duval, had been drinking heavily that day celebrating the fact that Duval, through an administrative mixup, would not have to spend the weekend in jail. Sometime between 7:00 p.m. and 8:00 p.m., the two men left home for the bar. Defendant took a loaded pistol with him and shortly after they arrived at the bar, he produced it when he got into an argument with another patron over money owed him. Apparently the dispute ended without incident and defendant continued his drinking. After midnight another argument developed, this time between Duval and Willie Mitchell. Defendant took out the gun again, shot at Mitchell but mistakenly injured Lawrence Evans who was trying to stop the fight. He then stepped forward and shot Mitchell in the stomach from close range. At that, the 40 or 50 patrons in the bar started for the doors. Some of the bystanders tried to remove Mitchell to a hospital and while they were doing so, the decedent, Marvin Lindsey, walked by defendant. Lindsey was apparently a friend or acquaintance of defendant although that was the first time he had *274 seen him that night. For no explained reason, defendant turned and fired his gun killing Lindsey.
Defendant did not contest the shootings. In defense, his counsel elicited evidence during the prosecution’s case of defendant’s considerable drinking that evening and he called as his only witness a forensic psychiatrist who testified on the debilitating effects of consuming alcoholic beverages. The jury acquitted defendant of intentional murder but convicted him of depraved mind murder and the two assault counts.
The murder conviction must be supported by evidence that defendant “[u]nder circumstances evincing a depraved indifference to human life * * * recklessly engage[d] in conduct which create[d] a grave risk of death to another person, and thereby cause[d] the death of another person” (Penal Law, § 125.25, subd 2). A person acts recklessly when he is aware of and consciously disregards a substantial and unjustifiable risk (Penal Law, § 15.05, subd 3), but to bring defendant’s conduct within the murder statute, the People were required to establish also that defendant’s act was imminently dangerous and presented a very high risk of death to Others and that it was committed under circumstances which evidenced a wanton indifference to human life or a depravity of mind (see People v Poplis, 30 NY2d 85, 88; People v Jernatowski, 238 NY 188; Darry v People, 10 NY 120, 148; see, generally, LaFave and Scott, Criminal Law, Depraved-Heart Murder, § 70, pp 541-545; Gegan, A Case of Depraved Mind Murder, 49 St John’s L Rev 417, 447). The crime differs from intentional murder in that it results not from a specific, conscious intent to cause death, but from an indifference to or disregard of the risks attending defendant’s conduct.
Whether the risk of defendant’s conduct was of the type condemned by the Penal Law was to be decided by the trier of the facts aided by appropriate instructions (People v Licitra, 47 NY2d 554, citing People v Haney, 30 NY2d 328; People v Angelo, 246 NY 451). The jury’s proper role, as the Appellate Division found, was to make a qualitative judgment whether defendant’s act was of such gravity that it placed the crime upon the same level as the taking of life by premeditated design (90 AD2d 972, 973; see, also, *275 People v Le Grand, 61 AD2d 815, cert den 439 US 835; ALI Model Penal Code, § 210.2, subd [1], par [b], comment, at pp 21-22 [1980]). It had to determine from the evidence if defendant’s conduct, though reckless, was equal in blameworthiness to intentional murder.
The evidence in the record supports the verdict. Defendant’s awareness of and indifference to the attendant risks was established by evidence that he entered a crowded bar with a loaded gun, he said that he was “going to kill somebody tonight”, or similar words, several times, and he had brought the gun out in the bar once before during the evening only to be told to put it away. Ultimately, he fired the gun three times in the “packed” barroom, conduct which presented a grave risk of death and did in fact result in the death of Marvin Lindsey. His conduct was well within that defined by the statute (see Penal Law, § 125.25, subd 2; § 15.05; People v Jernatowski, 238 NY 188, supra; Hechtman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law, § 125.25, p 399; LaFave and Scott, Criminal Law, Depraved-Heart Murder, § 70, p 543).
At the conclusion of the evidence and after the charge, defendant requested the court to instruct the jury on the effect of intoxication (see Penal Law, § 15.25). The court complied with the request when discussing the intentional murder and assault counts, but it refused to charge the jury that it could consider defendant’s intoxication in determining whether he acted “[u]nder circumstances evincing a depraved indifference to human life” in causing the death of Marvin Lindsey. The court held that the mens rea required for depraved mind murder is recklessness and that subdivision 3 of section 15.05 of the Penal Law precludes evidence of intoxication in defense of reckless crimes because it provides that “[a] person who creates such a risk but is unaware thereof solely by reason of voluntary intoxication also acts recklessly”. That ruling is assigned as error by defendant. He contends that depraved mind murder contains a different or additional element of mental culpability, namely “circumstances evincing a depraved indifference to human life”, which elevates defendant’s conduct from manslaughter to murder and that this *276 additional element may be negatived by evidence of intoxication (see Penal Law, § 15.25).
The Penal Law does not expressly define the term “element”. However, it does set forth what the “elements” of an offense are and identifies them, as does the common law, as a culpable mental state (mens rea) and a voluntary act (actus reus) (Penal Law, § 15.10). Both are required in all but the strict liability offenses (id.). Consistent with that provision, the statutory definition of depraved mind murder includes both a mental element (“recklessly”) and a voluntary act (“engaging in conduct which creates a grave risk of death to another person”) (see Penal Law, § 125.25, subd 2; §§ 15.05, 15.10). Recklessness refers to defendant’s conscious disregard of a substantial risk (Penal Law, § 15.05, subd 3) and the act proscribed, the risk creating conduct, is defined by the degree of danger presented. Depraved mind murder resembles manslaughter in the second degree (a reckless killing which includes the requirement that defendant disregard a substantial risk [Penal Law, § 125.15, subd 1; § 15.05, subd 3]), but the depraved mind murder statute requires in addition not only that the conduct which results in death present a grave risk of death but that it also occur “[u]nder circumstances evincing a depraved indifference to human life.” This additional requirement refers to neither the mens rea nor the actus reus. If it states an element of the crime at all, it is not an element in the traditional sense but rather a definition of the factual setting in which the risk creating conduct must occur — objective circumstances which are not subject to being negatived by evidence of defendant’s intoxication.
The view is supported by an analysis of the statutory development of the crime. Because of an inability to quantify homicidal risks in precise terms, the Legislature structured the degree of risk which must be present in nonintentional killings by providing that in a depraved mind murder the actor’s conduct must present a grave risk of death whereas in manslaughter it presents the lesser substantial risk of death (see, also, Penal Law, § 15.05, subd 4 [criminal negligence, a failure to perceive a substantial risk]). The phrase “[u]nder circumstances evincing a de *277 praved indifference to human life” refers to the wantonness of defendant’s conduct and converts the substantial risk present in manslaughter into a very substantial risk present in murder (see LaFave and Scott, Criminal Law, § 70, p 542). The predecessor statute referred to “a depraved mind, regardless of human life” (Penal Law, § 1044, subd 2, cited in People v Jernatowski, 238 NY 188, 190, supra) and the older cases, in attempting to explicate this factor, speak of a “depraved heart devoid of social duty and fatally bent on mischief” (see LaFave and Scott, Criminal Law, § 70, p 542). Such phrases, suggesting malice aforethought, have provoked statements that malice or intent is inferred in depraved mind murder (see, e.g., Darry v People, 10 NY 120, supra).[1] However, the focus of the offense is not upon the subjective intent of the defendant, as it is with intentional murder (Penal Law, § 125.25, subd 1), but rather upon an objective assessment of the degree of risk presented by defendant’s reckless conduct (see, e.g., People v Jernatowski, 238 NY 188, supra [firing a bullet into a room defendant knew contained several people]; People v Poplis, 30 NY2d 85, supra [defendant continually beat 3V£-year-old infant over five-day period]; see, also, Hechtman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law, § 125.25 [depraved mind murder committed when one shoots into a crowd, places a time bomb in a public place or opens the door of a lion’s cage in a zoo]; 8 Zett, NY Crim Prac, par 69.2 [2] [a], [c], p 69-18).
The present statute is derived from this conceptual base but it contains important differences. Thus, whereas the former penal statutes defined depraved mind murder by referring to defendant’s conduct, i.e., “[w]hen perpetrated by any act imminently dangerous to others”, etc., defined mens rea “as a depraved mind” and contained no references to recklessness (see Rev Stat of NY [1829], part IV, ch I, tit I, § 5, subd 2; former Penal Law, § 1044, subd 2), the present statute defines the crime by reference to the circumstances under which it occurs and expressly states that recklessness is the element of mental culpability required. *278 The concept of depraved indifference was retained in the new statute not to function as a mens rea element, but to objectively define the circumstances which must exist to elevate a homicide from manslaughter to murder (see People v Le Grand, 61 AD2d 815, cert den 439 US 835, supra).
In People v Poplis (30 NY2d 85, supra), we construed the present statute and pointed out that depraved mind murder is a crime involving recklessness plus aggravating circumstances. While not explicitly drawing the distinction between the depraved mind mens rea of the former statute and the “circumstances” clause which qualifies the element of recklessness in the new statute, Judge Bergan writing for a unanimous court noted that the new statute eliminated the “psychiatrically complicating” considerations found in the former statute (at p 88) and that it was a distinct improvement over the former statutes which spoke in terms of the operation of defendant’s mind. Our holding that depraved mind murder is distinguishable from manslaughter, not by the mental element involved but by the objective circumstances in which the act occurs, finds sound support in that decision.
Further evidence that “recklessness” is the mens rea, and the only mens rea, of the crime is to be found in other sections of article 15. Section 15.05, which was intended to “limit and crystalize” the culpable mental states involved in the criminal law (see Hechtman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law, § 15.05), includes recklessness as one of those culpable mental states but it does not list “depraved indifference”. Moreover, subdivision 1 of section 15.15 provides that when an offense requires a particular culpable mental state, such mental state is designated by use of the terms found in section 15.05. When only one culpable mental state appears in a statute defining an offense, section 15.15 directs that the mental state is presumed to apply to every element of the offense. The only culpable mental state found in section 125.25 which defines depraved mind murder is recklessness; it is defined in subdivision 3 of section 15.05 (which prohibits evidence of intoxication to negative it) and the statute prescribes that it apply to every element of the offense.
*279 The dissenter’s concern that this decision will result in wholesale depraved mind murder prosecutions for what are essentially intentional murders is unwarranted. Our statutes have included a crime of depraved mind murder in its various forms and definitions for over 150 years. Its nature is “well understood” (see People v Poplis, 30 NY2d 85, 88, supra), and the unusual settings appropriate to it have been stated frequently (see citations, supra, at p 277). It is not and never has been considered as a substitute for intentional homicide. That intoxication evidence might under some unusual circumstances negative the intent of an intentional homicide although by virtue of the statute it would have no similar effect on the same act charged as done recklessly in a depraved mind murder should not alter the implementation of the statute. A similar alleged paradox exists presently for an act done under a mistaken belief of fact (see Penal Law, § 15.20, subd 1, par [a]).
In sum, the statutory requirement that the homicide result from conduct evincing a depraved indifference to human life is a legislative attempt to qualitatively measure egregiously reckless conduct and to differentiate it from manslaughter. It does not create a new and different mens rea, undefined in the Penal Law, or a voluntary act which can be negatived by evidence of intoxication. If the objective circumstances under which the crime is committed constitute an element of it, they do so only in the sense that carrying a gun or acting in concert with another are elements of the crime of robbery or that the theft of more than $250 is an element of grand larceny. It is an element which elevates the severity of the offense but it is not an element subject to being negatived by evidence of intoxication as may intent or the physical capacity to act.[2]
In conclusion, it is worth noting that at common law intoxication was not a defense or excuse to criminal charges (People v Koerber, 244 NY 147, 151; People v Leonardi, 143 NY 360; People v Rogers, 18 NY 9), but was *280 viewed instead as an aggravating circumstance which heightened moral culpability (see People v Koerber, supra, at pp 151-152, citing 8 Holdsworth’s History of English Law, pp 442-443). The common-law courts viewed the decision to drink to excess, with its attendant risks to self and others, as an independent culpable act. Despite widespread acceptance of this rule,' legal authorities began to recognize that the debilitating impact of voluntarily consuming excessive amounts of alcohol warranted the admission of evidence of intoxication in some cases, particularly to negative proof that defendant possessed the physical capacity to commit the crime, by striking a blow, for example (see ALI, Model Penal Code, Commentaries to Tentative Draft No. 9, May 8, 1959, p 4). In New York the Legislature further modified the common-law rule by permitting the defendant to introduce evidence of intoxication to aid the jury in determining his motive or intent in committing an act (see former Penal Code [1881], § 22; People v Mills, 98 NY 176).
Notwithstanding this relaxation of the prohibition against use of intoxication evidence, the present statute when enacted in 1967 continued to foreclose the use of intoxication evidence in cases involving recklessness. The rationale is readily apparent: the element of recklessness itself — defined as conscious disregard of a substantial risk — encompasses the risks created by defendant’s conduct in getting drunk.
Ultimately, the only intended purpose in permitting the jury to consider intoxication in a reckless crime is to negate defendant’s awareness and disregard of the risk. It is precisely that point — the inconsistency of permitting ..reckless and otherwise aggravating conduct to negate an aspect of the offense — that persuades us that intoxication evidence should be excluded whenever recklessness is an element of the offense (see, generally, ALI Model Penal Code [Proposed Official Draft, 1962], § 2.08, subd [2]). In utilitarian terms, the risk of excessive drinking should be added to and not subtracted from the risks created by the conduct of the drunken defendant for there is no social or penological purpose to be served by a rule that permits one who voluntarily drinks to be exonerated from failing to *281 foresee the results of his conduct if he is successful at getting drunk.
Accordingly, the order of the Appellate Division should be affirmed.

. Inferred intent is a legal fiction much like the transferred intent concept of felony murder. It is perhaps indicative of the analytical problems involved in these two traditional crimes, depraved mind murder and felony murder, that they were defined in the same subdivision of the old statute (former Penal Law, § 1044, subd 2).

. The dissent suggests that defendant’s knowledge that his conduct will “with substantial certainty * * * result in the death of another” is part of the definition of depraved mind murder (dissent, at p 285). That language is not found in our statute (see Penal Law, 8 125.25, subd 2). The quotation is based upon a legislative history from an unrelated English Law Commission Report which is quoted in an article of Professor Gegan dealing principally with People v Kibbe (35 NY2d 407) (Gegan, A Case of Depraved Mind Murder, 49 St John’s L Rev 417).