OPINION OF THE COURT
Dominic R. Massaro, J.
The novel question presented here is whether imbibing by a chronic alcoholic can rise to the level of misconduct making for recklessness per se. The court, absent any scientific stan *511 dard of proof to the contrary, is disinclined to equate alcoholism with involuntariness; notwithstanding, it seeks some limiting principle whereby application of the cruel and unusual punishment prohibition does not result in exoneration of the chronic alcoholic for criminal conduct.
The defendant here is charged with arson in the second degree (Penal Law § 150.15) and reckless endangerment in the first degree (Penal Law § 120.25). More specifically, he is alleged to have set fire to the apartment in which he resided with his ex-wife and children.
Tried before the court, without jury, it is clear from the evidence adduced that the People have proved beyond a reasonable doubt that the defendant did, in fact, set two separate fires in the apartment. This following an argument earlier in the day with his former spouse, threatening her with harm. The evidence further establishes that the defendant is an alcoholic of classic dimension, caught in the vortex of a severe drinking problem that has determined his behavior, despite the constancy and regularity of violent consequences over which he has no control, for upwards of 15 years. Albeit sincere efforts to which he testified, the defendant has failed "to reclimb the slope”.* The evidence likewise is conclusive that he was severely intoxicated on April 24, 1986, at the time that the premises were set ablaze.
Indeed, the defense admits the act. It contends that the defendant, who testified that he did not remember his arrest on the occasion for which he was being tried by reason of his intoxicated state, was incapable of formulating the requisite intent necessary to subject him to liability for the crime of arson in the second degree. While not conceding this point, the People urge the court to consider in its deliberations the lesser included offense of reckless arson, that is, arson in the fourth degree (Penal Law § 150.05).
Did the defendant’s severe intoxication on the date in question negate the intent element required to substantiate the crime of arson in the second degree? And, if not, may he still be held liable for the lesser included offense?
*512 It is estimated that 10 million Americans suffer from some form of alcoholism (US Dept of Health, Educ and Welfare, Alcohol, Drug Abuse, and Mental Health National Data Book, at 15 [1980]).
In New York, there are 1.4 million alcoholics, 9.3% of the State’s population. The scourge of highway deaths caused by intoxicated drivers distracts from other reflections of the serious depths the problem presents, including the fact that one third of all general hospital admissions are related to the misuse of alcohol and one quarter of all suicides — approximately 30 times that of the general population — involve alcoholic abusers (Ten Bensel, Lecture Outline: Medical/Expert/ Evidentiary Issues, NY State Jud Seminar, Rochester, NY, July 1987). These statistics only begin to illustrate the scope of the problem of alcoholism facing our citizenry.
Alcoholism is generally defined as the chronic, pathological use of alcohol. There is a 30-year consensus in the medical profession that such pathological use of alcohol is a disease. The American Medical Association first described the disease as appropriate for medical treatment in 1956, stating that: "Alcoholism is an illness characterized by preoccupation with alcohol and loss of control over its consumption such as to lead usually to intoxication if drinking is begun; by chronicity; by progression; and by tendency toward relapse. It is typically associated with physical disability and impaired emotional, occupational and/or social adjustments as a direct consequence of persistent and excessive use” (Am Med Assn, Manual on Alcoholism, at 6 [1957]).
Even were our courts inclined to accept the disease thesis advanced by the medical profession, ignorance largely prevails as to its etiology (see generally, Powell v Texas, 392 US 514 [1968]).
Whatever the factors of alcoholism, the characteristic lack of control over drinking and the resulting dysfunction beyond the control of the alcoholic individual gives rise to issues both philosophical and legal, clearly of major social and judicial concern (see generally, Oct. 1986 Report of Governor’s Task Force on Alcoholism Treatment in Criminal Justice). Nor has legislative initiative been wanting (see generally, 1987 Report of Senate Comm on Alcoholism and Drug Abuse [Velella, Chairman]).
INTOXICATION AS A DEFENSE
At common law, intoxication was never a defense to crimi *513 nal misconduct (People v Koerber, 244 NY 147 [1926]). Instead, it was viewed as an aggravating circumstance which heightened moral culpability (People v Koerber, supra, at 151-152). "The common-law courts viewed the decision to drink to excess, with its attendant risks to self and others, as an independent culpable act” (People v Register, 60 NY2d 270, 280 [1983]). Later cases allowed evidence of intoxication to be introduced for limited purposes, such as to negative proof that the defendant possessed the physical capacity to commit the crime (People v Register, supra, at 280).
Under the present state of the law, voluntary intoxication is not a defense to a criminal charge; however, in crimes that have specific intent as an essential element, voluntary intoxication has been found to negative such intent, thereby rendering the defendant not guilty of the crime charged (People v Westergard, 113 AD2d 640 [2d Dept 1985]). The "intoxication defense” has been codified in New York as Penal Law § 15.25; it provides: "Intoxication is not, as such, a defense to a criminal charge; but in any prosecution for an offense, evidence of intoxication of the defendant may be offered by the defendant whenever it is relevant to negative an element of the crime charged.”
The Penal Law does not define the term "element”. " 'However, it does set forth what the "elements” of an offense are and identifies them, as does the common law, as a culpable mental state (mens rea) and a voluntary act (actus reus) (Penal Law, § 15.10)’ ” (People v Register, supra, at 276).
And while intoxication may negative the mens rea in a crime requiring specific intent, it may not negative the lower culpable mental state required in crimes of recklessness (Penal Law § 15.05 [3]).
A "specific intent” crime is one which requires more than the mere intentional doing of an act. It requires, in addition, that the actor have the accompanying state of mind whereby he intends that certain further consequences flow from his act. A "general intent” crime, on the other hand, penalizes, in itself, the intentional doing of a proscribed act (Note, Intoxication as a Criminal Defense, 55 Colum L Rev 1210 [1955]).
Crimes in which the requisite mens rea is one of recklessness are classified as "general intent” crimes.
In New York, recklessness is defined in Penal Law § 15.05 (3), which states, in pertinent part: "A person acts recklessly *514 with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists.”
Since recklessness requires awareness of the risk, it would seem reasonable that lack of awareness due to voluntary intoxication would negative the mens rea required in any crime of recklessness. "[Tjhere is some authority for the proposition that, where awareness is required for criminal liability, lack of awareness because of intoxication negatives the crime; that so long as [the defendant] is actually unaware of the risk it makes no difference how he came to be unaware” (LaFave and Scott, Criminal Law § 4.10 [c] [2d ed]). However, the majority of cases in the United States create a special rule relating to intoxication, thereby not allowing an intoxicated individual to avail himself of the defense in crimes of recklessness (LaFave and Scott, Criminal Law § 4.10 [c] [2d ed]). The New York codification is found at Penal Law § 15.05 (3), which states, in pertinent part: "A person who creates such a risk but is unaware thereof solely by reason of voluntary intoxication also acts recklessly with respect thereto.”
RECKLESS ENDANGERMENT IN THE FIRST DEGREE
"A person is guilty of reckless endangerment in the first degree when, under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person” (Penal Law § 120.25).
Upon analysis, the required culpable mental state, the mens rea, that gives rise to liability for this crime is one of recklessness. The actus reus required is engaging in conduct which creates a grave risk of death to another person. Nonetheless, the statute also requires "circumstances evincing a depraved indifference to human life”. (Penal Law § 120.25.) The question therefore arises whether this language creates a required mental state more culpable than mere recklessness — one which may be negatived by proof of intoxication. This issue was considered in People v Register (supra, at 276), a case dealing with "depraved mind murder”, a crime identical to reckless endangerment in the first degree in all respects except for result.
The majority opinion in Register (supra) held that the required culpable mental state in depraved mind murder is *515 one of recklessness. The court further held that the additional requirement that the crime be committed " 'under circumstances evincing a depraved indifference to human life’ ” refers neither to the mens rea nor the actus reus. (Supra, at 276.) Rather, "[i]f it states an element of the crime at all, it is not an element in the traditional sense but rather a definition of the factual setting in which the risk creating the conduct must occur — objective circumstances which are not subject to being negatived by evidence of defendant’s intoxication” (People v Register, supra, at 276). In part, the court in Register (supra) relied upon the fact that article 15 of the Penal Law includes recklessness as one of the culpable mental states but does not list "depraved indifference”. Moreover, the majority opinion points out: "[Subdivision 1 of section 15.15 provides that when an offense requires a particular culpable mental state, such mental state is designated by use of the terms found in section 15.05. When only one culpable mental state appears in a statute defining an offense, section 15.15 directs that the mental state is presumed to apply to every element of the offense. The only culpable mental state found in section 125.25 which defines depraved mind murder is recklessness; it is defined in subdivision 3 of section 15.05 (which prohibits evidence of intoxication to negative it) and the statute prescribes that it apply to every element of the offense.” (Supra, at 278.)
INVOLUNTARY INTOXICATION
Involuntary intoxication is a defense if it deprives the intoxicated person of understanding the nature and quality of his act or the knowingness that the act is wrong (LaFave and Scott, Criminal Law § 4.10 [f], at 393 [2d ed]; Note, Intoxication as a Criminal Defense, 55 Colum L Rev, at 1219).
This is so even when the crime requires only a general criminal intent. But, while there are situations in which a defendant may avail himself of the defense, these are severely limited (cf., People v Scott, 146 Cal App 3d 823, 194 Cal Rptr 633 [1983], wherein the evidence established that the defendant unknowingly and therefore involuntarily ingested some kind of hallucinogen with his alcohol). "The paucity of successful pleas of involuntary intoxication has led one commentator to conclude that involuntary intoxication is simply and completely nonexistent’ ” (Note, Criminal Responsibility of Chronic Alcoholics, 52 Cornell L Q 470, 473, citing Hall, *516 Intoxication and Criminal Responsibility, 57 Harv L Rev 1045, 1054-1056). In general, anything short of fraud, force or coercion has been held to be voluntary (Note, Intoxication as a Criminal Defense, 55 Colum L Rev, at 1219).
As we have seen, there is a recognition among physicians that alcoholism is a disease characterized by loss of control over the consumption of alcoholic beverages. Can then an alcoholic’s inebriated state(s) ever be considered truly voluntary? This question and a related one dealing with narcotic addiction have been dealt with by some courts. One such case is Robinson v California (370 US 660 [1962]), wherein the Supreme Court held unconstitutional a statute making it a criminal offense to be " 'addicted to the use of narcotics.’ ” The court based its opinion, in part, upon the fact that addiction is an illness, and to hold a person criminally liable for an illness would be to inflict cruel and unusual punishment in violation of the Constitution (Robinson v California, supra, at 667).
Relying in part upon the opinion in Robinson (supra) some courts subsequently held that it would be cruel and unusual to punish a chronic alcoholic for the crime of public drunkenness, as such a person is powerless to stop drinking (Driver v Hinnant, 356 F2d 761 [4th Cir 1966]; Easter v District of Columbia, 361 F2d 50 [DC Cir 1966]). These courts have said, in essence, that public drunkenness is an involuntary act when committed by a chronic alcoholic.
Subsequently, however, the United States Supreme Court, in Powell v Texas (392 US 514, 517, supra), upheld the conviction of a person for violation of article 477 of the Texas Penal Code which provided that it was an offense to be " 'drunk or be found in a state of intoxication in any public place’ ”. The Supreme Court based its opinion, in part, upon the lack of evidence in the trial court record relating to the nature of the defendant’s drinking problem, the circumstances surrounding the drinking bout that resulted in his conviction, and, indeed, in the nature of alcoholism itself. The court found that the medical profession lacked a true consensus as to the manifestations of alcoholism and even as to whether alcoholism is a separate disease in any meaningful biochemical, physiological or psychological sense (Powell v Texas, supra, at 522). The court further held that Powell’s conviction did not violate the Cruel and Unusual Punishment Clause of the Eighth Amendment (applicable to the States through the Fourteenth Amend). It found the situation in Powell *517 (supra) distinguishable from the one in Robinson v California (supra) in that Powell was convicted not of being a chronic alcoholic, but for being drunk in a public place on a particular occasion. Thus, he was being punished for the performance of an act, rather than for mere status (Powell v Texas, supra, at 532).
The Supreme Court also emphasized the fact that when Powell was sober, the act of taking the first drink was a " 'voluntary exercise of his will’ ”, even though this exercise was undertaken under the " 'exceedingly strong influence’ ” of a compulsion which was " 'not completely overpowering’ ” (Powell v Texas, supra, at 518, 520).
Thus, the Supreme Court, in Powell (supra), effectively short-circuited a developing line of cases (e.g., Driver v Hinnant, supra; Easter v District of Columbia, supra), and threw aside the notion of an alcoholic’s intoxication as being anything less than voluntary.
Following the holding in Powell (supra) New York’s Supreme Court, Appellate Division, upheld the conviction of a defendant for public intoxication (Penal Law § 240.40), finding that there is a direct relation between the conduct condemned by the statute and the legitimate interest which the community has in preserving the public order. The court emphasized that the statute does not exact punishment for merely a condition, but for a condition from which it might reasonably be expected that an annoyance or danger might arise (People v Myers, 39 AD2d 122 [2d Dept 1972]). Accordingly, the court upheld the constitutionality of the statute.
CONCLUSIONS OF LAW
Some commentators have speculated that courts will be required, some time in the future, to meet the argument that the intoxication of a chronic alcoholic is, on its face, involuntary (see, Note, Criminal Responsibility of Chronic Alcoholics, 52 Cornell L Q, at 479). If such were the case, the chronic alcoholic could never be held liable for crimes that he committed while in a severely intoxicated state. As of yet, no court has extended the defense to preclude prosecution of an alcoholic for non-alcohol-related crimes committed while in an intoxicated state. And, presently, alcoholism is not a defense even to alcohol-related crimes that punish more than mere status.
In view of the Supreme Court holding in Powell (supra) it *518 would appear that any change in the law would find basis only in conclusive medical evidence spurred by growing social concern, rather than constitutional pivots. Yet, if alcoholism is a disease characterized by an inability to control the consumption of alcoholic beverages, then the imposition of criminal liability for acts performed while drunk would at first blush defy logic.
Separating the physical act of drinking from the causative condition, alcoholism, is the distinguishing factor to which we must pay heed. Alcoholics should be held responsible for their conduct; they should not be penalized for their condition. An enlightened society cannot otherwise justify itself.
If an alcoholic knows that he is prone to commit criminal acts while drunk and that the consumption of even one drink will destroy his ability to resist further drinking, to the point of intoxication, as in the instant case, it must follow that his voluntarily imbibing of the first drink is the very initiation of a reckless act — and the concomitant disregard of the substantial and unjustifiable risk attendant thereto. If so, under our law the consumption of said drink by such alcoholic raises the act to the level of recklessness per se, subjecting him to strict accountability for crimes such as reckless arson and/or reckless endangerment now before the court. No case has been uncovered imposing liability at this early threshold.
Arguendo, if we accept alcoholism as a disease, the hypothesis suggests that some (though probably not all) alcoholics lack the ability to control the taking of even the first drink. In paralleling the instant case, exculpatory legal argument on the proposition that the defendant’s addictive conduct was involuntary — whether psychological, biochemical, genetic, cultural and/or environmental — has not been shown. Nothing in the record was offered to explain or illuminate the defendant’s condition. Under familiar rules, expert opinions are certainly admissible on subjects involving professional or scientific knowledge not within the range of ordinary training or intelligence (People v Cronin, 60 NY2d 430 [1983]; De Long v County of Erie, 60 NY2d 296 [1983]; Dougherty v Milliken, 163 NY 527 [1900]).
Accepting the law as it now stands, then, it is clear that intoxication will negative the specific intent required in some crimes, but will not act as even a partial defense in general intent crimes. Moreover, though the law may evolve as new medical research on the nature of alcoholism becomes avail *519 able, alcoholism is not, according to the prevailing view, accepted as a defense to any crime.
Accordingly, upon the evidence adduced at the trial of this action, this court finds the defendant not guilty of arson in the second degree, which is defined as "intentionally damaging] a building * * * by starting a fire” (Penal Law § 150.15), as he lacked the specific intent to damage a building. However, the court finds the defendant guilty of the lesser included offense of arson in the fourth degree, which is defined as "recklessly damaging] a building * * * by intentionally starting a fire” (Penal Law § 150.05 [1]).
Further, and likewise, this court finds the defendant guilty of reckless endangerment in the first degree. Here, the defendant voluntarily commenced a reckless course of action (i.e., the act of his taking an alcoholic beverage), a risk in itself, the natural consequences of which, the unjustifiable endangerment of the lives of others, thus being intended. The court opines that the chronic alcoholism of this defendant combines with the totality of circumstances extant to make his conduct of disregard that of recklessness per se. Even were this not the court’s finding, the defendant’s having committed the arsonous act (i.e., lighting the fire[s]) would, nonetheless, make out the elements of the offense.

 The reference is to Virgil, and apt:
"The descent to hell is easy The gates stand open day and night But to reclimb the slope And escape to the upper air This is labor” (The Aneneid).