OPINION OF THE COURT
Daniel P. Conviser, J.
This opinion concerns a question which may be addressed this term by the Court of Appeals but arose in the instant matter as the most significant legal issue during the defendant’s trial: can a defendant’s voluntary intoxication be used in an appropriate case to negative the mental state of depraved indifference to human life? (See People v Heidgen, 87 AD3d 1016 [2d Dept 2011], lv granted 17 NY3d 957 [2011].) This court concludes that the answer to that question under current law is clearly yes.
Statement of Facts
The defendant was charged with one count of assault in the first degree in violation of Penal Law § 120.10 (3). It was alleged that, under circumstances evincing a depraved indifference to human life, he recklessly engaged in conduct which created a grave risk of death to another person and thereby caused serious physical injury to that person.[1] The People charged that the defendant pushed a 63-year-old man who was previously unknown to him onto the subway tracks of the Times Square subway station at approximately 4:55 a.m. on Saturday, February 25, 2012. The victim was not hit by a train but suffered significant injuries including a badly broken kneecap, a broken nose, a broken elbow and a concussion. The incident followed a night which Mr. Lessey had spent at a nightclub where he consumed alcohol. Multiple witnesses and videotape from the subway station showed that the defendant was acting in a highly belligerent and intoxicated manner prior to the assault and that he had verbally and physically abused other train passengers immediately prior to the crime. Mr. Lessey testified and said he had blacked out after the crime and could not remember the incident. The defense claimed, however, that Mr. Lessey may *532 have been involuntarily intoxicated by a drug of some kind which the defense claimed may have been slipped into his drink by a man he had met at the nightclub who accompanied him to the train station.
At the close of the evidence, the defense asked that the court instruct the jury that in determining whether the defendant acted with depraved indifference, the jury could consider whether the defendant’s mind was affected by intoxicants to such a degree that he was incapable of forming that mental state. The defense asked for the optional standard pattern jury charge on that issue. (See Penal Law §§ 15.25, 120.10 [3]; CJI2d[NY] Penal Law § 15.25.) The People argued that no such instruction was authorized, citing People v Register (60 NY2d 270 [1983] [discussed infra]) and other authorities and urged instead that the court instruct the jury that voluntary intoxication could not negative depraved indifference. The People acknowledged, however, that assuming it would be proper to give the instruction requested by the defense in an appropriate case, the evidence in the instant matter supported such a charge. The court granted the defendant’s application. The defense also moved and the People consented to charge the jury on the lesser included offense of assault in the third degree, a class A misdemeanor under Penal Law § 120.00 (2). That crime occurs when a defendant recklessly causes physical injury to another person. After a full day of deliberations and multiple read-backs of the legal definitions of the crime elements, including the effect of intoxication on a defendant’s liability for depraved indifference, the jury found the defendant not guilty of assault in the first degree but guilty of assault in the third degree.
Conclusions of Law
The Penal Law Clearly Provides That Intoxication Can Negative Depraved Indifference
The basic legal landscape relevant to the instant issue is well understood and will be briefly outlined here. In People v Register, the Court considered the meaning of the term “depraved indifference to human life” with respect to the use of that term in the “depraved mind murder” provision of the second-degree murder statute. (Penal Law § 125.25 [2].) The Court held that the term “depraved indifference to human life” did not refer either to the mental state required for the crime or the acts constituting it. The Court held that if the term referred to “an *533 element of the crime at all, it is not an element in the traditional sense but rather a definition of the factual setting in which the risk creating conduct must occur.” (60 NY2d at 276.) Continuing, the Court held, evidence of a defendant’s intoxication could not negative such a factual setting since “depraved indifference to human life” referred to “objective circumstances which are not subject to being negatived by evidence of defendant’s intoxication.”
In a series of cases culminating in its decision in People v Feingold (7 NY3d 288 [2006]), however, the Court explicitly overruled its conclusion in Register that depraved indifference was an objective circumstance. Rather, the Court held, “depraved indifference to human life is a culpable mental state.” (7 NY3d at 294.) The Feingold Court did not rule on whether this new conception of depraved indifference modified the Register Court’s holding that intoxication could not be used to negative depraved indifference. As discussed infra, various courts have discussed the issue and reached varying conclusions about it since then.
In this court’s view, the conclusion that intoxication can be used to negative depraved indifference, after Feingold, is clear. That conclusion is compelled by the plain language of the Penal Law. Penal Law § 15.25 provides that “[intoxication is not, as such, a defense to a criminal charge; but in any prosecution for an offense, evidence of intoxication of the defendant may be offered by the defendant whenever it is relevant to negative an element of the crime charged.” When depraved indifference to human life was not a mental state, an act or a true crime element, the Court’s conclusion in Register made perfect sense. When depraved indifference was considered to be an objective circumstance in which a crime occurred, then, obviously, that objective circumstance could not possibly vary with the defendant’s level of intoxication. Now that depraved indifference is a culpable mental state, however, there is no basis to treat it differently than other mental states when considering the impact of intoxication.
The intoxication rule of Penal Law § 15.25 applies to any “element of the crime charged.” There is no question, following Feingold, that the mental state of depraved indifference to human life is an essential element of the crime of assault in the first degree. (See e.g. People v Brandi E., 105 AD3d 1341 [4th Dept 2013]; People v Hakim-Peters, 92 AD3d 1030 [3d Dept *534 2012]; People v Huntington, 57 AD3d 1238 [3d Dept 2008].) “Where the language of a statute is clear and unambiguous, courts must give effect to its plain meaning.” (People v Kisina, 14 NY3d 153, 158 [2010], quoting Matter of Tall Trees Constr. Corp. v Zoning Bd. of Appeals of Town of Huntington, 97 NY2d 86, 91 [2001]; Kramer v Phoenix Life Ins. Co., 15 NY3d 539, 550 [2010].) “The Legislature is presumed to mean what it says, and if there is no ambiguity in the act, it is generally construed according to its plain terms.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 94, Comment at 190; see also Simon v Usher, 17 NY3d 625, 628 [2011].)[2]
Given the fact that the plain meaning of the Penal Law provides that intoxication can be used to negative the mental state of depraved indifference, the question then becomes what factors lend further support or call into question the proposition that the Penal Law on this point should be read as it is written. Initially, there are multiple reasons, in addition to the statute’s plain meaning, which support the view that intoxication can negative depraved indifference. First, in accordance with its plain meaning, Penal Law § 15.25 has always been understood to apply to the mens rea element of crimes. It has been routinely applied to negative the mental state of intent in appropriate circumstances. (See e.g. People v Rodriguez, 76 NY2d 918 [1990]; People v Perry, 61 NY2d 849 [1984]; People v McCray, 56 AD3d 359 [1st Dept 2008], lv denied 12 NY3d 760 [2009]; People v Raffaele, 41 AD3d 869 [2d Dept 2007], lv denied 9 NY3d 925 [2007]; People v Stewart, 296 AD2d 587 [3d Dept 2002].)
Second, where the legislature has determined that intoxication should not be available to negative a mental state, they have said so. That is apparent, of course, in the definition of the mental state of recklessness under Penal Law § 15.05 (3). Recklessness occurs when a person is aware of and consciously disregards a substantial and unjustifiable risk and when that disregard constitutes a gross deviation from the standard that a reasonable person would observe. The statute provides that “[a] person who creates such a risk but is unaware thereof solely by *535 reason of voluntary intoxication also acts recklessly with respect thereto.”[3]
The fact that the legislature created a specific exclusion from the general provisions of Penal Law § 15.25 for the mental state of recklessness but did not create such an exclusion for any other mental state lends strong support to the view that courts are not empowered to read additional exclusions into the statute:
“It is a universal principle in the interpretation of statutes that expressio unius est exclusio alterius. That is, to say, the specific mention of one person or thing implies the exclusion of other persons or thing. As otherwise expressed, where a law expressly describes a particular act, thing or person to which it shall apply, an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted and excluded.
“Thus, where a statute creates provisos or exceptions as to certain matters the inclusion of such provisos or exceptions is generally considered to deny the existence of others not mentioned.” (Statutes § 240, Comment at 411-413 [emphasis added and footnotes omitted]; see also East Acupuncture, P.C. v Allstate Ins. Co., 61 AD3d 202 [2d Dept 2009]; Matter of Caspian Realty, Inc. v Zoning Bd. of Appeals of Town of Greenburgh, 68 AD3d 62 [2d Dept 2009].)
The legislative history of the intoxication and recklessness statutes, moreover, provides every reason to believe those provisions were drafted carefully. The statutes were both enacted as part of the 1965 revision of the Penal Law. The intoxication provision was derived from the Penal Law of 1909 and earlier from *536 the Penal Code of 1881.[4] The 1965 Penal Law revisions were the result of four years of work by the Temporary Commission on Revision of the Penal Law and Criminal Code. The Commission’s chairman, the Honorable Richard Bartlett, noted in a 1965 letter to the Governor’s counsel urging approval of the statute that its provisions governing the principles of criminal liability (including, obviously, the statutes here) had been grouped together in one section, given “careful definition” and “describe with precision the principles of criminal liability, defense, etc. which heretofore have been left largely to case law.”[5]
Of course, the drafters of the 1965 Penal Law were unaware of the Court of Appeals’ holding in Feingold. The Feingold decision, however, was rendered seven years ago. The legislature has obviously had ample opportunity since then to expressly state that intoxication should not generally negative the mental state of depraved indifference. They have thus far not chosen to do so. That is not, apparently, moreover, because they have been unaware of the issue. In fact, as Judge Graffeo outlined in her concurring opinion in People v Valencia (14 NY3d 927, 930 [2010]), the legislature has acted to address the question of whether intoxication can be used to negative depraved indifference in the wake of Feingold, but has thus far targeted that response to vehicular crimes:
“[Apparently as a result of our revision of depraved indifference jurisprudence, it became more difficult to prove depraved indifference in vehicular crimes where assault in the first degree or murder in the second degree was charged — a drunk driver accused of acting with depraved indifference to human life could ‘[p]erversely’ try ‘to defend such a charge by using a claim of extreme intoxication’ (Letter of Michael E. Bongiorno, President of New York State District Attorney’s Association, to Governor Spitzer, June 15, 2007, Bill Jacket, L 2007, ch 345, at 16) to negate the requisite state of mind requirement.
“Consequently, in 2007, the Legislature created the *537 new crime of aggravated vehicular assault (see L 2007, ch 345). That crime is similar to vehicular assault in the first degree except that it requires the People to prove that the defendant drove recklessly.”
Judge Graffeo went on to outline how an additional statute was enacted as part of the same chapter to create the new crime of aggravated vehicular homicide. (Penal Law § 125.14.) That crime also does not require proof that a defendant acted with depraved indifference. Judge Graffeo concluded that “[t]he stated purpose of this 2007 legislative package was to ‘repair th[e] apparent anomaly’ (Bongiorno Letter, Bill Jacket, L 2007, ch 345 at 16) caused by Feingold in cases where an inebriated driver who maimed or killed another person could rely on his intoxication to mitigate criminal responsibility.” (14 NY3d at 930-931.) The legislature has thus spoken on this issue repeatedly, both generally and with respect to specific crimes. Those enactments have both predated and postdated Feingold. The history of those enactments, the Penal Law’s current provisions and the manner in which they have always been interpreted provide compelling evidence, in this court’s view, that the Penal Law must be read as it is written.
The Weight of Current Appellate Authority Supports Allowing Intoxication to Negative Depraved Indifference
This court’s holding is in accord with the weight of current appellate authority. Both the Third and Fourth Departments have reached the same conclusion. (See People v Coon, 34 AD3d 869 [3d Dept 2006], lv denied 10 NY3d 763 [2008]; People v Wimes, 49 AD3d 1286 [4th Dept 2008], lv denied 11 NY3d 743 [2008].) In overturning a conviction for depraved indifference assault based on insufficient evidence in Coon, the Court noted, inter alia, that “as defendant was too intoxicated to form a specific criminal intent, he also would be incapable of possessing the culpable mental state necessary to prove depraved indifference.” (34 AD3d at 870.) Citing Coon, the Fourth Department reached the same conclusion in dicta in Wimes. There, in discussing the adequacy of a plea allocution, the Court noted that there had been no mention of the defendant’s intoxication during the plea, although “intoxication could have negated the element of depraved indifference in the crime to which defendant pleaded guilty.” (49 AD3d at 1287 [citations omitted].) Neither the Coon nor Wimes Courts offered any additional explanation for why they reached those conclusions. The trial court in People v Gray (13 Misc 3d 1233[A], 2006 NY Slip Op 52103[U] *538 [Suffolk County Ct 2006, Crecca, J.]) reached the same conclusion.
The First Department did extensively analyze the issue in People v Wells (53 AD3d 181 [1st Dept 2008], lv denied 11 NY3d 858 [2008]). In Wells, the Court upheld a pre-Feingold bench trial verdict convicting the defendant of depraved indifference murder after he had driven through the streets of Manhattan at a high rate of speed while intoxicated and hit a car, killing one person and seriously injuring another. The Court rejected the argument that the verdict should be overturned because the trial court did not consider whether the defendant’s intoxication could be used to negative the mental state of depraved indifference. Since Register was still good law when the verdict was reached and the defendant had not preserved a claim that an intoxication charge should have been used, the verdict was upheld.
The Court also said, in dicta, that it would have reached the same conclusion even if it had applied Feingold and discussed the policy problems with allowing intoxication to negative depraved indifference. However, the Court’s statement that it would have upheld the verdict even under Feingold focused primarily on the egregious facts of the Wells case and the evidence which indicated that the defendant’s mental state was not, in fact, negatived by intoxication. (See e.g. 53 AD3d at 191 [“while extremely intoxicated, defendant was not so impaired that he was unaware of what he had done”].) The Court did not hold, even implicitly, in this court’s view, that intoxication could not be used to negative depraved indifference. (See 53 AD3d at 195-196 [McGuire, J., concurring] [“(a)s I read the majority’s opinion, it does not decide this question (whether intoxication can be used to negative depraved indifference) sub silentio”].)
In his concurring opinion, Justice McGuire faulted the majority for its discussion of the intoxication charge issue when that was unnecessary to the decision and pointed out that it was logically incongruous to both hold that depraved indifference was a culpable mental state and that intoxication could not negate it:
“[B]ecause voluntary intoxication does not negate the mens rea of recklessness, it hardly follows that it does not or cannot negate the distinct mens rea of depraved indifference, ‘an additional requirement of the crime — beyond mere recklessness and risk— which in turn comprises both depravity and indif *539 ference.’ If voluntary intoxication remains irrelevant under Feingold as a defense to a depraved indifference prosecution, it must be that an individual can be depravedly indifferent to a risk without being aware of it. How that could be is far from obvious.” (53 AD3d at 195 [citations omitted].)[6]
The Second Department implicitly adopted the position outlined here, in this court’s view, in People v Valencia (58 AD3d 879 [2d Dept 2009], affd. 14 NY3d 927 [2010]) for a related reason. The Appellate Division majority in Valencia explicitly held that it was not deciding the question of whether intoxication could negative depraved indifference. The Court’s decision, however, in this court’s view, was necessarily premised on such a conclusion. In Valencia, the Appellate Division majority reversed the defendant’s conviction for assault in the first degree in a vehicle collision case because the defendant did not have the mental state of depraved indifference “at the time he collided with the complainants’ vehicles.” (Id. at 880.) The fact that the defendant had voluntarily gotten drunk before the accident, the Court held, could not be used to construe his mental state at the time of the crash. Depraved indifference had to be measured at the time a crime was committed:
“[W]e find unpersuasive the prosecution’s contention that the mens rea component of depraved indifference assault may be satisfied by considering the defendant’s state of mind at a point much earlier in time than the accident, when the defendant allegedly made a conscious decision to consume an excessive amount of alcohol with the awareness that he subsequently would be operating a motor vehicle. Assuming arguendo that the evidence would support such a finding, and that such a state of mind would otherwise satisfy the culpable mental state of depraved indifference to human life, we conclude that the defendant’s state of mind at the time he consumed the alcohol was too temporally remote” (58 AD3d at 880).
*540 The reasoning which the Appellate Division majority squarely rejected in Valencia reflects the only legal rationale which has been used to justify the argument that voluntary intoxication should not negative depraved indifference. It is the argument that one who voluntarily drinks should not then benefit from the foreseeable dangerous consequences of his intoxication and that to avoid that unjust result, depraved indifference should be measured not only at the instant of a crime’s commission but also with respect to actions of a defendant at the time he consumes alcohol. As the Court of Appeals summarized the argument in Register-.
“In utilitarian terms, the risk of excessive drinking should be added to and not subtracted from the risks created by the conduct of the drunken defendant for there is no social or penological purpose to be served by a rule that permits one who voluntarily drinks to be exonerated from failing to foresee the results of his conduct if he is successful at getting drunk.” (60 NY2d at 280-281.)
There will always be a time gap, and often a very substantial one, between a defendant’s consumption of alcohol and the commission of a crime while intoxicated. If a court cannot consider a defendant’s “conscious decision to consume an excessive amount of alcohol” (Valencia, 58 AD3d at 880) at a much earlier time than a depraved indifference crime as part of the depraved indifference calculus it is obvious that voluntarily intoxication can negative depraved indifference. A court considering a defendant who is, in fact, unable to form the mental state of depraved indifference at the moment of a crime due to intoxication and cannot look back to the defendant’s culpable mental state at the time of his alcohol consumption would seem to have implicitly adopted such a rule.
The Court of Appeals affirmed the Appellate Division’s decision in Valencia in a brief memorandum opinion which did not discuss the intoxication issue. The Court held that there was insufficient evidence to support a conviction for depraved indifference assault and that while the evidence indicated the defendant was “extremely intoxicated” (at 927) it did not establish that he acted with depraved indifference. Concurring in the judgment, Judge Jones expanded on the argument of the Appellate Division majority noting that
“it is a basic premise of Anglo-American criminal law that the physical conduct and the state of mind *541 must concur. . . .
“[T]he mens rea component of depraved indifference assault may not be satisfied by considering the defendant’s state of mind at a point much earlier in time than the accident” (14 NY3d at 933-934).[7]
In Heidgen, the Second Department majority did appear to hold that under current New York law intoxication could not negative depraved indifference. As in Wells, however, the Court’s decision was premised on its view that the evidence against the defendant was sufficient to demonstrate that intoxication had not, in fact, negatived the mental state of depraved indifference at the time of the defendant’s crime rather than any conclusion about the propriety of the trial court’s instructions on the issue. The defendant in Heidgen was convicted of two counts of depraved indifference murder and three counts of depraved indifference assault. In a horrific crime, he drove his vehicle the wrong way on a highway while intoxicated and struck a limousine head-on killing and seriously injuring multiple people. One of the people he killed was a child. The majority noted that Judge Graffeo, in her concurring opinion in Valencia, had called upon the legislature to determine the instant issue in light of Feingold. The Heidgen majority also noted that Judge Graffeo had said that the question was unsettled under current New York law. The majority thus reasoned that
“[i]t would not be appropriate for this Court, as the dissent suggests, to evaluate this case as if the Legislature had resolved this issue in favor of accepting voluntary intoxication as a defense to an element of depraved indifference. To date, the Legislature has not addressed this issue. In short, we decline to apply the approach urged by the dissent since it has neither been adopted by the Legislature nor announced by the Court of Appeals.” (87 AD3d at 1026.)
This court did not believe it was appropriate to adopt the Heidgen Court’s reasoning on this point in the instant case where this court was required to rule on the intoxication instruction issue. It is certainly true, as the Heidgen majority says, that the legislature has not acted in the years since Feingold to modify the general rules governing the circumstances under which intoxication can negative mental culpability. Controlling enact- *542 merits of the legislature, however, are obviously not limited to those which postdate important judicial decisions on the topics which a statute addresses. That is particularly true when seven years have passed since a decision. Moreover, as noted, supra, the legislature has spoken on this issue both before and after Feingold. The fact that the Court of Appeals has not yet resolved the matter, moreover, does not relieve lower courts of the responsibility for deciding it. It does not create a default rule under which a prior Court of Appeals holding should be mechanically applied, even if it is obviously no longer applicable.
The Argument That the Penal Law Should Not be Applied as Written
There is, in this court’s view, a cogent argument to be made for the proposition that intoxication, under current law, should not be read to negative depraved indifference. The argument is that such a rule is very bad policy, so bad, in fact, that it would lead to an unreasonable or absurd result which the legislature could never have intended. “An interpretation [of a statute] which is contrary to the dictates of reason or leads to unreasonable results is presumed to be against the legislative intent, and some other construction should be placed on the statute, if possible without violation of its language.” (Statutes § 143, Comment at 288.) This argument, the court would submit, however, does not withstand scrutiny for several reasons.
First, the language of the Penal Law on this issue is not ambiguous. It is clear. So to the extent the rule holding that a statute should be given one of multiple constructions which is most consistent with reason might lead to a contrary result in the instant matter, that rule is not implicated.
Second, there is nothing irrational about a rule which holds that intoxication can negative depraved indifference. The oft-repeated argument that a person who voluntarily becomes intoxicated should not be immunized from criminal acts which arise from that intoxication is certainly a reasonable one. But it is one which the legislature and our courts have consistently rejected with respect to the mental state of intent. It is undisputed that one who becomes intoxicated and is then charged with a crime requiring proof of intentional conduct can assert that he was unable to form that intent because he was drunk. Thus, for crimes requiring intent, intoxication can negative culpability. For crimes requiring recklessness, it cannot. The fact that the Penal Law currently places depraved indiffer *543 ence crimes on one side of that divide rather than the other, however, is not contrary to the dictates of reason. To the contrary, there are valid arguments for such a policy choice.
On the one hand, depraved indifference, it might be argued, should be treated just like recklessness because it is an extreme form of reckless conduct in which a defendant is not only reckless but depravedly indifferent to human life. On the other hand it could be argued that depraved indifference should be treated like intent, because one who is depravedly indifferent is generally penalized at the same level as one who acts intentionally. (Compare Penal Law § 120.10 [1] with [3] [punishing as a class B felony both a person who intentionally causes serious physical injury to another person with a dangerous instrument and a person who causes such serious physical injury with depraved indifference]; Penal Law § 125.25 [1], [2] [defining the crime of murder in the second degree as either causing a death intentionally or with depraved indifference].)[8]
It is also important to understand precisely why a rule holding that intoxication can negative depraved indifference might be seen as inappropriate and how the law might be changed to remedy any perceived problem. The policy argument that intoxication should not negative depraved indifference, in this court’s view, can be broken down into two closely related concerns. The first is the broad general argument that one who voluntarily becomes intoxicated should be held responsible for any criminal conduct which subsequently ensues, since people are generally presumed to understand that intoxication eliminates both the inhibitions and physical capacities which foster compliance with the law. There is also the closely related argument, however, that one who drinks knowing that he will be engaging in a specific activity which would be compromised by intoxication should properly be held responsible when the *544 foreseeable criminal consequences of engaging in that activity while intoxicated occur. The second argument arises most commonly and obviously with people who drink and drive a vehicle of some kind but might also arise where someone becomes intoxicated knowing they will be using a gun or operating heavy machinery, for example.
The general argument that one who drinks should be held responsible for any consequence of his voluntary intoxication applies to any case in which a depraved indifference crime is charged. The second argument, however, dealing with the foreseeability of specific consequences, does not. This case provides a good example. The defendant in this case, Andrew Lessey, at the time of this crime was a 30-year-old man who had never before been charged with a crime. He lives with his fiancée. They are expecting their first child. He also has a two-year-old daughter. He is employed as a shift leader at the retail outlet of a major drug store chain where he supervises multiple employees and is responsible for large amounts of cash.
A person who drinks and drives can properly be charged with the knowledge that the combination of those two activities might result in an vehicle accident, a death or a physical injury. The People alleged in the instant matter that Mr. Lessey became voluntarily intoxicated at a nightclub and later that same morning pushed a man onto the subway tracks. In the court’s view, however, the evidence did not allow the conclusion to be drawn that at the time he became intoxicated, Mr. Lessey should have foreseen that his intoxication would contribute to his commission of a later violent crime. The instant crime, to the contrary, in this court’s view, continues to be as inexplicable as it was egregious.
To the extent there is an argument that Mr. Lessey’s acquittal of the top charge in this case was unjust, moreover, that injustice, in this court’s view, did not arise from the fact that he was not convicted of a class B violent felony with a determinate sentence of up to 25 years. It arose from the fact that the only other alternative the jury had with respect to any criminal charge was a misdemeanor. The court does not know why the jury reached the verdict it did. However, it is certainly plausible that the court’s instruction that the jury could consider whether the defendant was unable to form the mental state of depraved indifference by virtue of his intoxication was a key factor which resulted in his acquittal of first-degree assault. Assuming that occurred (and the court does not know whether it did) there is *545 certainly also a strong argument to be made that one who voluntarily becomes severely intoxicated and then recklessly shoves another person headfirst onto subway tracks causing serious physical injury should be subject to more than a misdemeanor sanction.
As Judge Graffeo pointed out in Valencia, it is the legislature which should resolve the “perplexing question” of whether intoxication should generally be allowed to negative the mental state of depraved indifference. (14 NY3d at 931.) The 2007 legislative enactments addressing drunk drivers who kill or seriously injure victims, moreover, demonstrate why it is only the legislature which has the appropriate tools to do so. The court in this case had only three possible options: (i) instruct the jury that intoxication could negative depraved indifference; (ii) do not instruct the jury on the issue at all, or (iii) instruct the jury that voluntary intoxication would not negative depraved indifference. When the legislature addressed this issue in 2007, however, they were able to choose among innumerable options and make precise distinctions to confront the policy questions outlined here.
For example, the legislature addressed what may be the most common and certainly among the most culpable of human activities where voluntary intoxication might prevent the formation of the mental state of depraved indifference — drunk driving. They did not, however, in those enactments, address scenarios like the one in this case where it may have been less foreseeable that voluntary intoxication could result in the commission of a violent crime.
When they addressed the issue, moreover, they did not do so by simply determining that one who was incapable of acting with depraved indifference by virtue of voluntary intoxication should be subject to the same penalty as one who actually had that mental state at the time of a crime. They made the penalty for drunk drivers who did not act with depraved indifference but caused a death or serious physical injury with other aggravating circumstances culpable at a felony level one degree lower than those who acted with depraved indifference. (Compare Penal Law § 125.25 [2] [murder in the second degree, acting with depraved indifference, a class A-I felony] with § 125.14 [aggravated vehicular homicide, a class B felony]; § 120.10 [3] [assault in the first degree, acting with depraved indifference, a class B felony] with § 120.04-a [aggravated vehicular assault, a class C felony].) That one level difference has resulted in a sig *546 nificant distinction in the potential punishments for these crimes, particularly with respect to homicides. The minimum sentence for any offender convicted of depraved indifference murder, for example, is an indeterminate sentence of 15 years to life imprisonment. The minimum sentence for a first offender convicted of aggravated vehicular homicide is an indeterminate sentence of 1 to 3 years’ incarceration. (See generally Penal Law art 70.)
This court did not have the authority to reach the result which the People urged in this case. But it also did not have the tools to confront these complex questions properly. Nor is this a subject which the legislature has been reticent about addressing. Indeed, there are few areas of the law which have been such fertile ground for legislative enactments over the past 20 years as the enhancement of criminal penalties for conduct which the legislature has determined has not been treated with appropriate severity.
For all of those reasons, this court held and instructed the jury in this case, in accordance with the optional language of the CJI that “in determining whether the defendant acted with depraved indifference to human life, you may consider whether the defendant’s mind was affected by intoxicants to such a degree that he was incapable of forming the mental state of depraved indifference to human life.”

. The term “depraved indifference to human life” is sometimes referred to in this opinion with the shorthand “depraved indifference.”

. Certain passages of the instant opinion which outline general principles of statutory construction, the supporting authorities for those principles and the history of the modern Penal Law are copied or derived from earlier opinions by this court. Those earlier opinions are not cited here.

. There is an important point regarding the interplay of the general intoxication charge and the recklessness proviso which is not implicated in most cases but was here. The general intoxication charge refers simply to “intoxication” (whether voluntary or otherwise). The recklessness proviso deals only with “voluntary intoxication” (emphasis added). So, under current law, if a person is unable to form the mental state of recklessness due to his involuntary intoxication, he cannot act recklessly. In this case, there was significant evidence that the defendant was voluntarily intoxicated. Viewing the evidence in a light most favorable to the defendant, there was also an argument that the defendant was involuntarily intoxicated, although that evidence, in the court’s view, was much less significant and credible.

. See Penal Law § 15.05; Historical and Statutory Notes, McKinney’s Cons Laws of NY, Book 39, Penal Law § 15.25 at 130 (2009 ed).

. Letter from Richard J. Bartlett to Sol N. Corbin, Esq., July 1, 1965 at 2, Bill Jacket, L 1965, ch 1030 at 5 (emphasis added). In a long and distinguished legal career, Richard Bartlett served as a member of the New York State Assembly from 1959 to 1966 and as the first Chief Administrative Judge of the New York State Unified Court System from 1974 to 1979.

. Of course, Justice McGuire’s point could also be made with respect to the Penal Law’s proviso that voluntary intoxication cannot negative recklessness. It is one thing, however, to acknowledge that the legislature may write statutes which create specific exceptions to general provisions of law where those exceptions are inconsistent with how such provisions would normally be understood. It is quite another for a court to construe words written by the legislature in a manner wholly contrary to their plain meaning.

. As discussed, supra and infra, Judge Graffeo wrote a separate concurring opinion in Valencia.

. There are also crimes, of course, where a charge that intoxication can negative mental culpability is inappropriate because a crime does not require proof of a defendant’s mental state. In People v Newton (8 NY3d 460 [2007]), for example, the Court of Appeals held that a defendant charged with sodomy in the third degree (now called “criminal sexual act” in the third degree) was not entitled to an intoxication charge because the crime required, inter alia, only that a “reasonable person in the actor’s situation” would have understood that a victim did not consent to sexual relations. (See Penal Law §§ 130.40 [3]; 130.05 [2] [d].) The Court held that “[b]ecause a defendant’s subjective mental state is not an element of the crime of third-degree sodomy, [under the Penal Law sections listed here] evidence of intoxication at the time of the sexual act is irrelevant.” (8 NY3d at 464.) That reasoning is obviously inapplicable where a defendant’s subjective mental state is an element of a crime.