■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v

JOHN F. ZEBROWSKI, Appellant. [604 NYS2d 622] —Mikoll, J. Appeal from a judgment of the County Court of Albany County (Keegan, J.), rendered May 22, 1991, upon a verdict convicting defendant of the crime of murder in the second degree.

Defendant was indicted and charged with three counts of murder in the second degree (Penal Law § 125.25 [1], [2], [3]) arising out of events that occurred on September 3-4, 1989. The record reveals that defendant met Kenneth Tuczynski at the Waterworks Pub, described as a "gay bar", in the City of Albany on the evening of September 3, 1989, and went with Tuczynski to the latter's townhouse when the bar closed at about 1:00 A.M. on September 4, 1989. Tuczynski later was found unclothed and dead on the floor of his bedroom at about 10:00 A.M. that same day. Defendant took the victim's VCR and reportedly sold it to obtain the proceeds to purchase cocaine. Alfred Leigh, with whom defendant had used cocaine earlier, testified that defendant told him after the incident that he had just killed someone. Charles Greenfield, with whom defendant had been staying, testified that the next morning defendant told him that he had killed a man who was supposed to give him some cocaine but who did not have it when he wanted it, that he then became angry and, using a hammer he picked up from the floor, struck the man with it repeatedly. A half-full glass of orange juice was found on the nightstand next to Tuczynski's bed bearing defendant's fingerprint. According to Tuczynski's girlfriend, Carol Young, Tuczynski never drank orange juice because he did not like it—it bothered his stomach.

Defendant told his girlfriend, Kristi Ferris, that Tuczynski had lured him to Tuczynski's apartment with a promise of cocaine and that Tuczynski then tried to force him to have sex. She said that defendant also told her there was a fight and that after defendant emerged from the bathroom and observed Tuczynski going through his wallet, he killed him with a hammer. She also said that defendant told her that he did not have his pants on at that time. David Morin, defendant's foster brother, testified that defendant said he had met someone in a bar and was attempting to obtain drugs, that following a struggle after the individual came out of the bathroom with no clothes on, defendant picked up a nearby hammer and used it on him. Defendant said that he had killed the individual.

Expert medical testimony given by the People's pathologist,

Jeffrey Hubbard, revealed that Tuczynski had died as a result of a minimum of nine blows to the back and side of his head, causing massive brain and skull damage, and that most of the blows were struck while Tuczynski was lying on the floor face down, not moving. However, the first blow could have been administered while Tuczynski was standing. There was also testimony that Tuczynski was bisexual, that his blood alcohol level was .22% and that his ability to defend himself could have been diminished due to the alcohol in his body.

County Court charged the jury regarding intentional murder, depraved indifference murder and felony murder but refused to charge manslaughter in the first and second degrees and criminally negligent homicide as requested by defendant. Following trial, the jury returned a verdict finding defendant guilty of murder in the second degree (Penal Law § 125.25 [2] [depraved indifference]) and the court sentenced defendant to a prison term of 25 years to life.

Defendant's arguments for reversal are rejected for the reasons discussed below. The judgment of conviction should be affirmed. Initially, we find no need to address defendant's claim that County Court's refusal to charge manslaughter in the first degree as a lesser included offense of intentional murder was error as defendant was found innocent of the higher crime.

We reject defendant's contention that County Court's refusal to charge manslaughter in the second degree (Penal Law § 125.15 [1]) as a lesser included offense of the second count alleging murder in the second degree, i.e., depraved indifference murder (Penal Law § 125.25 [2]), was reversible error *(see, People v Williams,* 161 AD2d 825, *lv denied* 76 NY2d 868). Such an instruction is to be given "only where a reasonable view of the evidence supports a finding that the defendant committed the lesser offense but not the greater" *(People v Jones,* 185 AD2d 470, 471, *lv denied* 80 NY2d 975). The People properly argue this was not error because there is no reasonable view of the evidence that defendant committed a crime of less gravity than depraved indifference murder.

"The phrase '[u]nder circumstances evincing a depraved indifference to human life' is not a *mens rea* element focusing on the subjective intent of the defendant but rather involves 'an objective assessment of the degree of risk presented by defendant's reckless conduct' * * * It 'refers to the wantonness of defendant's conduct and converts the substantial risk present in manslaughter into a *very* substantial risk present

in murder' * * *" *(People v Gomez,* 65 NY2d 9, 11, quoting *People v Register,* 60 NY2d 270, 277, *cert denied* 466 US 953 [emphasis in original]; *see, People v Roe,* 74 NY2d 20, 24-25; *see also, People v Tinning,* 142 AD2d 402, 407, *lv denied* 73 NY2d 1022). "[W]hether a defendant acted recklessly and under circumstances evincing a depraved indifference to human life is a 'qualitative judgment to be made by the jury' " *(People v Tinning, supra,* at 407, quoting *People v Le Grand,* 61 AD2d 815, *cert denied* 439 US 835; *see, People v Roe, supra).* However, the mental element of recklessness in depraved indifference murder cannot be negatived by evidence of intoxication *(see, People v Register, supra,* at 278-280).

A review of this record indicates a lack of identifiable credible evidence from which a jury could conclude that defendant was guilty of reckless conduct, but not in "circumstances evincing a depraved indifference to human life" (Penal Law § 125.25 [2]) so as to find defendant guilty of the lesser crime of manslaughter in the second degree (Penal Law § 125.15 [1]) but not the higher crime (Penal Law § 125.25 [2]) *(see, People v Scarborough,* 49 NY2d 364, 369-374). Although the evidence would permit the jury to conclude that there was a struggle in Tuczynski's bedroom there is insufficient evidence to support the conclusion that the hammer blows were delivered in response to the victim's alleged attempt to force defendant into an act of sodomy. The evidence as to exactly when the alleged sexual attack was to have occurred is equivocal at best based on defendant's reported statements and the jury would have to speculate to determine that it precipitated the hammer blows. Ferris explicitly denied that defendant said that he was afraid of the victim trying to force defendant to have sex with him. Defendant did not tell her that he had such fear. Morin said that defendant told him that after Tuczynski came out of the bathroom with no clothes on they had a struggle of some kind and defendant saw a hammer nearby, picked it up and used it on the victim. The statements attributed to defendant are inconclusive, invite speculation and are not sufficient to permit a jury to find that defendant's reckless conduct did not occur in "circumstances evincing a depraved indifference to human life" (Penal Law § 125.25 [2]).

The jury could not, once it rejected intentional murder and found recklessness, based on the expert medical evidence presented at the time, reasonably find defendant guilty of reckless conduct without at the same time finding that the reckless conduct occurred in "circumstances evincing a de-

praved indifference to human life" (Penal Law § 125.25 [2]). Defendant admitted to Ferris that he had come up from behind decedent and hit him with the hammer. Hubbard, the pathologist, testified that the victim's head could not have moved more than one half of an inch to an inch while he lay face down on the floor and that defendant was hitting the back and side of his head with the hammer a minimum of nine blows with such force as to cause the blood to splash upward and onto the wall a few feet away. Hubbard stated that the autopsy revealed that the victim had inhaled blood into his lungs, indicating that he was breathing after a large amount of blood started to flow over his face from the hammer blows, and that the victim was alive after one or more blows were struck. Those acts show a wanton disregard for human life. The reckless conduct described indicates, per se, "depraved indifference" to human life.

Defendant's contention that County Court's charge on reasonable doubt was reversible error because it lowered the standard of proof the People were required to meet is without merit. In our view the charge as a whole adequately explained "reasonable doubt" to the jury (see, People v House, 132 AD2d 807, 808; see also, Cage v Louisiana, 498 US 39, 41). The disputed charge involves this paragraph explaining reasonable doubt: "It is a doubt, one that leaves your mind in such a state of suspense of uncertainty that you cannot say that you are convinced to a moral certainty. If you have such a doubt you must acquit the defendant * * * [I]f you believe the defendant guilty to a moral certainty, then you have been satisfied beyond a reasonable doubt and it is your duty to convict." The terms "to a moral certainty" and "beyond a reasonable doubt" have been held to be synonymous by the First Department (People v Brown, 183 AD2d 569, lv denied 80 NY2d 901; People v Fox, 72 AD2d 146, 147). However, the Second Department held that equation of "beyond a reasonable doubt" with "moral certainty" is error (People v Patterson, 76 AD2d 891; People v Turrell, 66 AD2d 862). We have found that a charge using the terms, taken as a whole, correctly placed the burden of proving guilt beyond a reasonable doubt upon the prosecution (People v Lyng, 154 AD2d 787, 789, lv denied 74 NY2d 950). In our view something additional to the mere use of the term "to a moral certainty" that lessens the People's burden of proof is required to render a trial court's charge reversible error.

The charge in dispute does not contain the fatal flaws found in the disputed charge in Cage v Louisiana (498 US 39, 41,

*supra),* which "equated a reasonable doubt with a 'grave uncertainty' and 'an actual substantial doubt,' and stated that what was required was a 'moral certainty' that the defendant was guilty". In *Cage,* the United States Supreme Court further stated: "It is plain to us that the words 'substantial' and 'grave,' as they are commonly understood, suggest a higher degree of doubt than is required for acquittal under the reasonable doubt standard. When those statements are then considered with the reference to 'moral certainty,' rather than evidentiary certainty, it becomes clear that a reasonable juror could have interpreted the instruction to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause" *(supra,* at 41). *(See also, Sullivan v Louisiana,* 508 US —, 113 S Ct 2078, 2080.) Here, County Court merely used the word uncertainty in conjunction with the terms moral certainty and reasonable doubt without further qualification. This did not change the degree of proof required for conviction.

Finally, defendant's argument that the prosecutor's comments made in summation, referring to unknown facts, to the prosecutor's kneeling down and banging the floor nine times with a hammer, and to the statement "this is a gay bashing, pure and simple", denied defendant a fair trial and require reversal is rejected. The reference to unknown facts was fair comment in response to the evidence and defense counsel's summation. The hammer-banging demonstration was not objected to at the trial, was made in response to defendant's claim of self-defense and, in any event, did not deprive defendant of a fair trial warranting the exercise of this Court's discretion to reverse in the interest of justice (CPL 470.15 [6]). While defendant did timely object to the prosecutor's use of the term "gay bashing", this remark was not so inflammatory as to be unduly prejudicial as the issue was already prevalent in the case due to evidence describing Tuczynski as a frequent customer of the "gay bar" where they met, that defendant had also been there before, what allegedly transpired at the victim's home and defendant's claim that the victim attempted to forcefully sodomize defendant.

Weiss, P. J., Yesawich Jr., Crew III and White, JJ., concur. Ordered that the judgment is affirmed.