*388 Smith, J.
(dissenting). This case illustrates the problems attendant to using a charge of depraved indifference as a proxy for intentional murder. Defendant was indicted on charges of intentional murder (Penal Law § 125.25 [1]) and depraved indifference murder (Penal Law § 125.25 [2]). While defendant was acquitted of intentional murder and convicted of depraved indifference murder, the trial evidence is insufficient to establish that conviction. Because of the lack of evidence, the conviction should be reduced to manslaughter in the second degree, the lesser included offense of depraved indifference murder. I, therefore, dissent.
The events of July 31, 1998 can reasonably be understood to support a conviction of intent to commit murder or intent to inflict serious bodily injury resulting in death.
On July 31, 1998, defendant was attending a birthday party at the home of his girlfriend, Candace Johnson. Three other adults were also in attendance, including Candace’s mother, Rose Liburd (Liburd), her brother, Terrence Johnson, and her sister, Monon Washington (Washington). All of these family members were in the house when Washington’s boyfriend, Timothy Range (Range), arrived. Three children were also present in the home.
Just inside the front door, there is a vestibule. A glass door separates the vestibule from the rest of the house. If one faces that vestibule door, the rooms of the house are situated in a line on the right going back — the front room, bedroom, dining room and kitchen. A hallway of approximately 15 feet runs the length of the house and is situated to the left of the row of rooms. Two more bedrooms and a bathroom are located in the back of the downstairs area. The shooting took place at the vestibule door, at one end of the 15-foot hallway. The witness viewed the shooting from the other end of the hallway.
Washington testified that while she was sitting in the front room of the house, she observed through a window Candace greet Range and the two proceed into the house. She testified farther that she heard Range accuse defendant of cheating on Candace by “talking to a girl on Church Avenue.” She heard some sort of scuffle, the sound of something hitting the door and Range tell defendant to step outside. Washington testified that she told Liburd that defendant and Range were about to fight, and Liburd left the dining room, running to the hallway.
Liburd testified that she heard Range arrive and move down the hall toward the back bedroom. Fifteen minutes later, *389 Liburd heard voices. The people were speaking in normal tones, although Liburd could not hear what they were saying. When Liburd was told that Range and defendant were about to fight, she went into the hallway. Range “was standing down the hall behind the door (to the vestibule).” The door was partially open and Range was against the wall. She saw defendant walk out of the door from the hallway. Liburd described the shooting in this manner:
“Q. And what happened after you saw Poppy [defendant] walking out?
“A. Poppy walked out and Tim [Range] was just standing there, and no sooner than he walked out he turned right back around and came in and drew the gun.
“Q. And what did he do?
“A. He drew the gun and he shot Tim and he ran.” Liburd testified further that there was no fighting between the two men.
Defendant presented an entirely different set of facts to support a justification defense. He testified that upon arriving, he met Candace. He walked to the back room, greeted Terrence and attempted to greet Range, who had a mean look on his face. Range told defendant that he heard something about defendant and demanded that they talk outside. Defendant followed Range to the front hallway.
Defendant testified that he was afraid as he walked down the hall. Defendant stopped by the door, and Range got right in his face and told defendant, “I should kill you for the bullshit that you did.” Defendant stated that Range suddenly lifted his shirt and pulled out a gun. Because Range was so close to him, defendant feared that he would be shot in the back. Defendant grabbed Range’s hand, which was on the gun, and turned his wrist away. Range pushed defendant against the wall, and the two struggled. Defendant’s hand was wrapped around Range’s, and Range’s hand was on the trigger. The gun was facing Range when it went off. Defendant then fled.
A forensic scientist, Dr. Beverley Leffers, testified that the cause of death was a gunshot to the chest which perforated the lung. She testified that she examined the tee shirt that Range had been wearing and found a black deposit consistent with gun powder, which indicated that the gun was held at close range, no more than 12 to 18 inches away.
*390 The court submitted charges for intentional murder and depraved indifference murder, to be considered in the alternative. The court also submitted intentional and reckless manslaughter as lesser included offenses of the respective murder counts. These lesser charges were to be considered only if the defendant was found not guilty of intentional murder and depraved indifference murder. Defendant objected to the charge for depraved indifference murder, arguing as follows:
“I see there is no reasonable view of the evidence to indicate that that should be charged. There is nothing to indicate in this record that defendant at any time acted in a depraved manner, which would require him to do some thinking about it, and recklessly, which would reach that particular point where murder in the second degree reckless and depraved should be charged.”
In support of the depraved indifference murder charge, the People argued that defendant’s act could be considered reckless because “he fired the gun a few feet from two small children.” The court specifically stated that the depraved indifference murder count did not go to the small children, but nonetheless denied defendant’s motion to dismiss that count, observing, “some people can conclude from the record that pointing a loaded gun at someone and pulling the trigger at point blank range within 18 inches is depraved, as well as intentional.”
The jury found defendant not guilty of intentional murder but guilty of depraved indifference murder. Prior to sentencing, defendant made a CPL 330.30 (1) motion to set aside the verdict, arguing that the evidence was legally insufficient to establish depraved indifference murder. Supreme Court denied the motion, and the Appellate Division affirmed.
That the Legislature sought to distinguish intentional killings from non-intentional killings is obvious from the statutory language. A person is guilty of intentional murder in the second degree when “[w]ith intent to cause the death of another person, he causes the death of such person or of a third person” (Penal Law § 125.25 [1]). A person acts “intentionally” with respect to a result “when his conscious objective is to cause such result” (Penal Law § 15.05 [1]). By contrast, a person is guilty of depraved indifference murder in the second degree, when “[u]nder circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a *391 grave risk of death to another person, and thereby causes the death of another person” (Penal Law § 125.25 [2]). A person acts “recklessly” with respect to a result “when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur” (Penal Law § 15.05 [3]).
Depraved indifference murder is not a substitute for intentional murder. A finding of depraved indifference murder should be based on evidence that the defendant killed another under circumstances which demonstrate a wanton disregard of human life or a depravity of mind (People v Register, 60 NY2d 270, 274, 279 [1983]). In other words, defendant must have indulged in highly reckless behavior, indeed gravely risky behavior, but it is behavior that falls short of a certainty of death or serious injury. Intentional behavior, by contrast, requires that defendant subjectively intend to commit murder.
The defendant in Register drank heavily throughout the day and went to a crowded bar, taking a loaded gun. After an argument with one patron over money owed, defendant produced his gun. The dispute ended, and defendant continued to drink for another four hours. After midnight, another argument began between defendant and one Willie Mitchell. Defendant fired his gun, but missed Mitchell and injured a third person, who had intervened to stop the fight. Defendant then stepped forward and shot at Mitchell at close range. At that time, some 40 or 50 patrons started for the door. When bystanders tried to remove Mitchell to a hospital, a second victim walked by defendant, and defendant fatally shot this second person.
Defendant was tried for both intentional and depraved indifference murder. In rejecting the defense of intoxication to negate culpability for depraved murder, the Court emphasized that the applicable mens rea of depraved mind murder was recklessness. Depraved indifference murder “refers to neither the mens rea nor the actus reus. If it states an element of the crime at all, it is not an element in the traditional sense but rather a definition of the factual setting in which the risk creating conduct must occur — objective circumstances which are not subject to being negatived by evidence of defendant’s intoxication” (id. at 276). The Court examined the statutory development of the crime and noted that the Legislature sought to structure the degree of risk which must be present in non-intentional killings by “providing that in a depraved mind murder the actor’s conduct must present a grave risk of death whereas in manslaughter it presents the lesser substantial risk of death * * *. The phrase ‘[u]nder circumstances evincing *392 a depraved indifference to human life’ refers to the wantonness of defendant’s conduct and converts the substantial risk present in manslaughter into a very substantial risk present in murder * * *” (id. at 276-277 [citations and quotation marks omitted] [emphasis in original]). “[T]he focus of the offense is not upon the subjective intent of the defendant, as it is with intentional murder * * * but rather upon an objective assessment of the degree of risk presented by defendant’s reckless conduct * * *” (id. at 277).
Thus, in Register, the “objective circumstances” evincing a grave risk of death were to be found in defendant’s getting drunk, carrying a loaded gun and shooting it three times in a crowded public place, a setting where the risk of danger to people was very substantial. The “objective circumstances” reveal the peril to which defendant subjected everyone in that bar.
We have found depraved indifference where the defendant indulged in behavior evidencing a grave risk of death, but again it is behavior that falls short of a certainty of death. In People v Roe (74 NY2d 20 [1989]), this Court, citing Register, reasoned that depraved indifference to human life is assessed “based on an objective assessment of the circumstances surrounding the act * * * and not the mens rea of the actor” (id. at 27). We found “objective circumstances” sufficient to support a finding of depraved indifference to human life where the defendant, with knowledge of weapons, deliberately loaded a mix of “live” and “dummy” shells at random into the magazine of a 12-gauge shotgun, pumped a shell into the firing chamber not knowing whether it was a “dummy” or a “live” round, raised the shotgun, pointed it directly at the victim and pulled the trigger (see People v Russell, 91 NY2d 280 [1998] [affirming depraved indifference murder where defendants fired high-powered guns capable of shooting bullets at an average rate of 1,100 feet per second across a pedestrian thoroughfare, and a stray bullet hit bystander]; People v Gomez, 65 NY2d 9 [1985] [affirming conviction for depraved indifference murder where person drove at a speed of 40 miles per hour down a busy sidewalk without attempting to put on the brakes and killed two people]; People v Fenner, 61 NY2d 971 [1984] [applying rationale of Register, and concluding that the number of shots fired, the number of persons fired at and the fact that they were running toward the door of the poolroom in an effort to get away from the defendant were circumstances sufficient to present a question for the jury as to depraved indifference]; People v Kibbe, 35 NY2d *393 407 [1974] [finding factual circumstances sufficient to establish depraved indifference where defendants robbed victim, took his glasses, pulled his pants down around his ankles, pulled his shirt above his waist and abandoned him on a two lane highway in near zero temperature weather]; People v Poplis, 30 NY2d 85 [1972] [finding depraved indifference to human life where defendant brutally beat a child over a five-day period]).
There is, however, a point at which the risk of death or risk of serious bodily injury approaches a certainty, and it defies logic to charge or to make a finding of depraved indifference. Such a case is presently before us.
We are obliged to view the evidence in the light most favorable to the People, bearing in mind that credibility is a matter to be determined by the trier of fact (see People v Malizia, 62 NY2d 755, 757 [1984]). The People contended that defendant was stepping out of the front door, that he turned around, came back through the door, aimed his gun at the victim and shot him at close range, from between 12 and 18 inches away. Thus, the evidence reasonably supported a charge that the defendant intended to kill the victim or intended to cause serious bodily injury to the victim. The evidence did not support a charge of depraved indifference murder because the risk of death or serious bodily injury from a shot at that close range was a certainty and not merely a “grave risk” (see Register, 60 NY2d 270 [grave risk where defendant shot three times in a crowded bar]; People v Roe, 74 NY2d 20 [grave risk where defendant randomly mixed live and dummy ammunition in a shotgun in a game of Russian Roulette]; see also People v Magliato, 110 AD2d 266, 270 [1985], affd 68 NY2d 24 [1986] [conviction for depraved indifference reduced to manslaughter in the second degree where conduct was not wanton, gross or callous indifference to human life where defendant aimed gun at victim from 45 feet away and testified that gun discharged accidently when he was startled]). To uphold the conviction of depraved indifference murder in this case is to authorize the substitution of depraved indifference murder for intentional murder at any time that a person shoots and kills another.
Because the jury did not consider the lesser included offenses of first and second degree manslaughter (People v Johnson, 87 NY2d 357, 361 [1996] [where inconsistent counts, jury should consider top counts before considering the lesser included of either count]), and because the jury’s acquittal of intentional murder and finding of guilt as to depraved indifference murder raise double jeopardy issues as to any retrial on *394 the manslaughter first degree charge, the only remedy is to reduce the conviction to manslaughter in the second degree and remand to the trial court for re-sentencing.