OPINION OF THE COURT
Titone, J.
Defendants Richard and Beatrice Flayhart, who are husband and wife, were charged with reckless manslaughter and criminally negligent homicide on the theory that, acting together and with the requisite culpable mental states, they engaged in conduct that brought about the death of Richard’s brother, Terry Flayhart. Terry, who lived with defendants during the last period of his life, was mentally retarded and afflicted with a number of ailments, including cerebral palsy and epilepsy. The People’s case against defendants was based on the premise that Terry, who weighed approximately 75 pounds just before his death, had died of neglect while he was living in defendants’ home and was totally dependent upon their care.
The medical evidence introduced at defendants’ trial showed that Terry had died of malnutrition and inflammation of the lungs, with pneumonia as a complicating factor. There was also evidence that the lung inflammation was the result of Terry’s having aspirated food from his stomach which had been ingested some six hours earlier. The other evidence against defendants consisted primarily of their own state *741 ments to Sheriffs deputies regarding their care of Terry, some background information relating to Terry’s history, proof of a $122,000 trust fund that had been established to pay for Terry’s care and proof that Terry had not seen his regular doctor during the last two years of his life.
At the close of the evidence, the trial court submitted the charged counts to the jury, along with an instruction on accomplice liability under Penal Law § 20.00. The jury found defendants guilty of criminally negligent homicide, and each defendant was sentenced to a term of imprisonment. The judgments of conviction were affirmed by the Appellate Division. This appeal, taken by permission of a Judge of this court, ensued.
Defendants’ primary contention on their appeals to this court is that the convictions cannot be sustained because it is logically impossible to "aid and abet” criminally negligent homicide, an unintentional crime. Specifically, they contend that the crime of which they were convicted is nonexistent because one cannot "intentionally aid” another to "fail to perceive a substantial and unjustifiable risk” of death, the requisite mental state for criminally negligent homicide (see, Penal Law § 15.05 [4]; § 20.00).
However, Penal Law § 20.00 imposes accessorial liability on an accomplice not for aiding or encouraging another to reach a particular mental state, but rather for intentionally aiding another to engage in conduct which constitutes the charged offense while himself "acting with the mental culpability required for the commission” of that offense. Thus, defendants were convicted because the jury found that each of them, while "fail[ing] to perceive a substantial and unjustifiable risk” of death, intentionally aided the other to engage in certain conduct, such as failure to provide food and medical care, which ultimately brought about Terry Flayhart’s death (see, Penal Law § 125.10). There is no logical or conceptual difficulty with such convictions (see, People v Abbott, 84 AD2d 11; see also, Donnino, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law art 125, at 491; cf., People v Campbell, 72 NY2d 602).
Defendants also make a number of claims relating to the fairness of their trial. Only two of these merit comment.
Defendant Richard Flayhart argues that the trial court committed reversible error when, over timely objection, it permitted the prosecutor to introduce evidence that he was in *742 line to inherit the trust fund that had been established to pay for Terry’s care in the event that Terry died. The trust fund evidence was admitted on the theory that it constituted proof of a motive. Defendant contends that the admission of this evidence was improper because it was irrelevant to any material issue in this case involving unintentional crimes.
Contrary to defendant’s contention, however, the trust fund evidence was not wholly irrelevant. In addition to the criminally negligent homicide count on which he was ultimately convicted, defendant was charged with reckless manslaughter (Penal Law § 125.15 [1]), which includes as an element awareness of and conscious disregard for a substantial and unjustifiable risk of death (Penal Law § 15.05 [3]). Although this element is not the same as an "intentional” mental state within the technical meaning of Penal Law § 15.05 (1) (having a "conscious objective * * * to cause [a] result or to engage in [prohibited] conduct”), it does suggest some deliberate mental activity — i.e., conscious disregard for a known risk. In this respect, the term "unintentional” crime is something of a misnomer when applied to the crime of reckless manslaughter.
Because reckless manslaughter includes an element of deliberate conduct, the admission of evidence of a motive may be justified in a proper case. In this instance, for example, the jury could have considered the trust fund as some evidence of defendant Richard Flayhart’s incentive to disregard the obvious risk that his brother would die if his basic medical and nutritional needs were neglected. Thus, its admission in evidence was not erroneous.
Both defendants also argue that the trial court erred in the manner in which it handled certain photographs of Terry’s body that were made available during their trial. The court refused to permit the jury to examine the photographs during either the defense attorneys’ cross-examination of the People’s medical expert or their summations. However, the photographs were marked as exhibits and the jury was permitted to inspect them during its deliberations. Defendants now contend that they were prejudiced by the court’s rulings.
Although the court’s decisions in relation to the photographs were somewhat unusual, we cannot say that they constituted an abuse of the court’s discretionary power to manage the conduct of the courtroom proceedings and determine the manner in which the jury would be exposed to stark *743 photographic evidence (see, People v Pobliner, 32 NY2d 356). The trial court refused defense counsels’ request to allow the jury to view the photographs during cross-examination and summations because it was concerned that the jury would be distracted by the graphic physical evidence and also because it feared that the jury would use the photographs as a basis for forming an opinion before all of the evidence was complete. We note that the court did not prevent counsel from referring to the photographs during summation or showing them to the People’s medical expert during cross-examination. Moreover, as the trial court observed, the jury was entitled to request a readback of the expert’s testimony if, after deliberating, it found itself confused about any references that might have been made to the photographs. Since no prejudice or error is evident, there is no basis to disturb the convictions or rulings below.
Defendants’ remaining contentions are either unpreserved or without merit.
Accordingly, the order of the Appellate Division should be affirmed.