*142 OPINION OF THE COURT
Titone, J.
Defendant Murray Kaplan was convicted of first degree criminal sale of a controlled substance (Penal Law § 220.43) because of his involvement in a narcotics network which operated out of a garment business office located in the Empire State Building. His primary contention on appeal is that although the culpable state required for the commission of this crime is "knowledge,” the trial court should have instructed the jury that defendant could not be held liable as an accomplice unless he acted with the specific intent to sell a controlled substance. We conclude that such an instruction is not required and that, accordingly, the conviction should be affirmed.
From May 1, 1986 to February 17, 1987, the police investí *143 gated a cocaine ring which apparently operated out of an office maintained by defendant’s cousin, Mike Kaplan, in the Empire State Building. Detective Janis Grasso, posing as a drug courier for someone named "Ronnie” from Atlantic City, engaged in a series of transactions, primarily with Mike Kaplan. The charges against defendant were based on his actions on October 15, 1986, when, pursuant to a prior phone call, Grasso went to Kaplan’s office to purchase 10 ounces of cocaine and found Kaplan, Kaplan’s brother and defendant present. After introducing Grasso to the other two men, Mike Kaplan told defendant "to take care of the young lady.” Defendant got off the couch, walked to a file cabinet in the room, removed a manila envelope from it, and placed it on the desk in front of Grasso. She in turn took out $15,000 in prerecorded buy money and placed it on the table. Defendant picked up the money, took it over to the table and began counting it. At the same time, Grasso opened the manila envelope, took out a zip-lock plastic bag, and placed the drugs into her purse remarking that "it looks nice.”
Defendant was subsequently charged with, inter alia, criminal sale of a controlled substance.[1] Before the case was submitted to the jury, defense counsel asked the court to instruct the jurors that in order to convict defendant as an accomplice they must find that he had "specific intent” to sell a controlled substance, and that he had to "share the intent or purpose of the principal actors.” The court denied defendant’s request, noting that the mental culpability required for criminal sale was not "intent” but "knowledge” and, further, that the standard charge for accomplice liability requires proof that the defendant "intentionally aided” the other participants. Following the court’s charge, which tracked the language of the applicable statutes, the jury found defendant guilty of criminal sale.[2] The Appellate Division, First Depart *144 ment, affirmed defendant’s conviction, without opinion, and leave to appeal was granted by a Judge of this court.
Penal Law §20.00 provides that a person may be held criminally liable as an accomplice when he performs certain acts and does so "with the mental culpability required for the commission” of the substantive crime. Despite this language, defendant argues, based on case law predating the present Penal Law, that even though the substantive crime with which he was charged — criminal sale of a controlled substance —requires only knowledge,[3] the statute should be construed to require proof of a more exacting mens rea, namely specific intent to sell.
Under section 2 of the former Penal Law, a person could be convicted as a principal if he "aid[ed] and abett[ed] in [the] commission [of a crime]”. The former Penal Law, however, did not specifically state what type of acts were required for conviction (see, Denzer & McQuillan, Practice Commentary, McKinney’s Cons Law of NY, Book 39, Penal Law art 20, at 32 [1967]; 7 Zett, New York Criminal Practice |f 62.1 [2]). Consequently, in order to prevent the imposition of criminal liability for the principal’s crime on someone who may have been merely present, the courts required proof that the aider or abetter " 'share[d] the intent or purpose of the principal actor’ ” (People v La Belle, 18 NY2d 405, 412, quoting 1 Burdick, Crimes § 221, at 297; see, People v Morhouse, 21 NY2d 66, 73-74 [accomplice had knowledge of and shared guilty purposes of principle]; People v Fasano, 11 NY2d 436, 443 [accomplice must be "engaged in a common purpose or design”]; see also, Comment, Jury Instructions in Aiding and Abetting Cases, 68 Colum L Rev 774, 777-780).
Defendant’s argument is that this "shared intent or purpose” test required proof, in his case, that he acted with the specific intent to sell cocaine. However, any lack of clarity that previously existed under section 2 of the former Penal Law was eliminated by the adoption of section 20.00 of the revised Penal Law, which specifies that an accomplice must have acted with the "mental culpability required for the *145 commission” of the particular crime. Further, we have already construed section 20.00 as not requiring specific intent within the meaning of Penal Law § 15.05 (1) when the substantive crime does not involve such intent (see, People v Flayhart, 72 NY2d 737, 741). Finally, the "shared intent or purpose” language from our earlier cases, which appears occasionally even in cases arising under the modern statute (see, e.g., People v Allah, 71 NY2d 830, 831 ["community of purpose”]; People v Cummings, 131 AD2d 865; People v McLean, 107 AD2d 167, 169, affd 65 NY2d 758), cannot be read for the proposition, advanced by defendant, that a specific wish to commit the principal’s substantive crime is required in all circumstances, including those involving substantive crimes with mental states other than that defined in Penal Law § 15.05 (1). Indeed, the "shared intent or purpose” test set forth in the case law merely establishes that acts undertaken in relative innocence and without a conscious design to advance the principal’s crime will not support a conviction for accomplice liability. The same conclusion, however, is implicit in the specific requirement in Penal Law § 20.00 that the accomplice "solicit[ ], request[ ], command[ ], importunef ], or intentionally aid[ ]” (emphasis added) the principal, since all of the delineated acts import goal-directed conduct (see, 7 Zett, New York Criminal Practice [[ 62.1 [2]).
The distinction made here is a subtle, but important, one. It is well illustrated by our holding in People v Flayhart (supra), in which we concluded that the defendants could be guilty as accomplices to the crime of criminally negligent homicide under Penal Law § 125.10, even though neither defendant had the victim’s death as a "conscious object” (see, Penal Law § 15.05 [1]). This result flowed naturally from the fact that both defendants could be found to have "fail[ed] to perceive a substantial and unjustifiable risk” of death — the "mental culpability required for the crime” (Penal Law § 20.00 ["acting with the mental culpability required for the commission thereof’]) — and that both engaged in deliberate conduct to advance the common enterprise, i.e., the egregious neglect of the victim.
Similarly, in People v Lipton (54 NY2d 340), this court upheld various counts of a physician’s conviction arising out of a scheme in which the defendant wrote prescriptions for controlled substances that were subsequently either used by himself and his codefendants or sold to others by one of his codefendants (id., at 344). The court’s statement in dictum
*146 that the physician could not have been liable as an accomplice to an illegal sale absent a "specific interest in having the actual drugs sold to some third party” or some other form of "specific intent” (id., at 349), was an apparent reference to the "intentionally aiding” requirement of Penal Law § 20.00, as distinguished from the statutory mens rea requirement that the accomplice act with the level of mental culpability required for the principal’s crime.
For the same reasons, we reject defendant’s alternative argument that the crime of which he was convicted under the court’s charge is indistinguishable from second degree criminal facilitation, a class C felony (Penal Law § 115.05). A person is guilty of second degree criminal facilitation when "believing it probable that he is rendering aid to a person who intends to commit a class A felony, he engages in conduct which provides such person with means or opportunity for the commission thereof and which in fact aids such person to commit such class A felony” (Penal Law § 115.05 [emphasis supplied]). This statute was enacted to provide an additional tool in the prosecutorial arsenal for situations where the "facilitator” knowingly aided the commission of a crime but did not possess the mental culpability required for commission of the substantive crime (see, Donnino, Practice Commentaries, McKinney’s Cons Law of NY, Book 39, Penal Law art 115, at 432-433; see generally, People v Beaudet, 32 NY2d 371, 377; People v Gordon, 32 NY2d 62, 65; Staff Notes of Commission on Revision of Penal Law and Criminal Code, Proposed New York Penal Law, McKinney’s Spec Pamph, at 328 [1964]). Additionally an "accomplice” and a "facilitator” are distinguishable in that the accomplice must have intentionally aided the principal in bringing forth a result, while the facilitator need only have provided assistance "believing it probable” that he was rendering aid.
In defendant’s case there was sufficient evidence for the jury to find that, knowing the substance in question was cocaine, defendant intentionally aided Mike Kaplan by delivering it to Detective Grasso (see, People v Dordal, 55 NY2d 954; People v Payne, 135 AD2d 746; People v Serra, 104 AD2d 66; People v Bray, 99 AD2d 470). The evidence established that after being asked by Mike Kaplan to "take care of’ Detective Grasso, defendant immediately went to a file cabinet drawer, retrieved a package containing cocaine, and gave the package to Grasso in exchange for money which defendant immediately began to count. That defendant neither negotiated nor arranged the *147 transactions does not affect his liability as an accomplice, and the court was not required to include specific intent to sell as an element in its charge on accessorial liability. The elements were adequately conveyed when the court told the jury that it must find both that defendant acted with the specific intent required for the substantive offense, i.e., knowledge that the substance was cocaine, and that he "intentionally aided” the
sale.
We have considered defendant’s remaining contentions and they are either únpreserved or without merit.
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Hancock, Jr., and Bellacosa concur.
Order affirmed.

. The additional charges were (1) a conspiracy count, which was severed; (2) sale and possession counts arising out of an alleged August 26, 1986 incident, which were dismissed before trial; (3) a possession count arising out of the October 15, 1986 incident, which was dismissed on the prosecutor’s motion and (4) sale and possession counts involving an incident occurring on August 5, 1986, as to which the jurors in the present action were unable to agree.

. Along with defendant, Mike Kaplan, and six others were also indicted and charged with conspiracy, sale, and possession of narcotics as a result of the investigation. All of these defendants have either been convicted, or have pleaded guilty, to some or all of the counts against them.

. Penal Law § 220.43 provides, in pertinent part, that "[a] person is guilty of criminal sale of a controlled substance in the first degree when he knowingly and unlawfully sells” (emphasis supplied). A person acts knowingly "when he is aware that his conduct is of such nature or that such circumstance exists” (Penal Law § 15.05 [2]). In contrast, a person acts intentionally "when his conscious objective is to cause such result or to engage in such conduct” (Penal Law § 15.05 [1]).