THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TROY HECTOR, Appellant. [818 NYS2d 241]—

Appeal by the defendant from a judgment of the Supreme Court, Kings County (Carroll, J.), rendered October 28, 2003, convicting him of criminal sale of a controlled substance in the third degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is reversed, on the law, and a new trial is ordered.

The defendant contends that he was denied his right to a public trial (*see* US Const, 6th Amend; Civil Rights Law § 12; Judiciary Law § 4; *People v Jones,* 96 NY2d 213 [2001]). During a *Hinton* hearing (*see People v Hinton,* 31 NY2d 71 [1972], *cert denied* 410 US 911 [1973]), the defendant objected to the exclusion of certain family members from the courtroom, to wit, his mother and brother (*see People v Garcia,* 95 NY2d 946, 947 [2000]; *People v Bass,* 259 AD2d 419, 420 [1999]). The trial court ordered a "partial" closure of the courtroom and placed officers outside the courtroom door with instructions to screen

those who wished to enter during the testimony of an undercover police officer. It did not specify or justify closure with respect to the identified family members, despite the defense counsel's specific objection in that regard (*see People v Kin Kan*, 78 NY2d 54, 58 [1991]; *People v Garcia*, 271 AD2d 81 [2000], *affd* 95 NY2d 946 [2000]). This screening procedure "raises the same secrecy and fairness concerns that a total closure does" and implicates the defendant's Sixth Amendment right to a public trial (*People v Jones, supra* at 219).

Before a trial court may exclude specific individuals from the courtroom by a closure order, the People must present evidence that the individuals pose a threat to the safety of an undercover police officer who is going to testify (*see People v Nieves*, 90 NY2d 426, 430 [1997]; *People v Heslop*, 307 AD2d 975 [2003]; *People v Hargett*, 293 AD2d 757 [2002]). The People failed to present sufficient evidence that the defendant's mother and brother posed a threat to the undercover officer or that they even resided in the area of the defendant's arrest (*see People v Ematro*, 284 AD2d 408, 409 [2001]; *People v Rivera*, 281 AD2d 496, 497 [2001]). In addition, while it is true that the defense counsel merely suggested that the defendant's mother might have been in court the following day (*see People v Ford*, 235 AD2d 285 [1997], citing *People v Bouche*, 208 AD2d 445 [1994]), he specifically identified that the defendant's brother "came to court to watch in his mother's behalf" (*see People v Bass*, 259 AD2d at 420, *supra*).

Accordingly, on this record, the trial court's closure order was "broader than constitutionally tolerable" and thus, constituted a violation of the defendant's overriding right to a public trial (*People v Gutierez*, 86 NY2d 817, 818 [1995]; *see People v Heslop, supra* at 975; *People v DeJesus*, 274 AD2d 400 [2000]; *People v Ramos*, 222 AD2d 708 [1995]). As a result, the defendant is entitled to a new trial.

Viewing the evidence in the light most favorable to the prosecution, we find that it was legally sufficient to establish his guilt beyond a reasonable doubt, based upon an acting in concert theory (*see* Penal Law § 20.00; *People v Bello*, 92 NY2d 523, 526 [1998]; *People v Kaplan*, 76 NY2d 140, 144 [1990]; *People v Flocker*, 223 AD2d 451 [1996]; *People v Wylie*, 180 AD2d 774 [1992]). Here, the alleged accomplice did not merely respond to the undercover officer's inquiry as to who had drugs for sale. He confirmed to the defendant that crack cocaine was requested, waited with the undercover officer as the defendant retrieved the drugs, stood by during the exchange, and following the sale, went with the defendant to the laundromat located across the

street (*see People v Torres*, 211 AD2d 406 [1995]; *cf. People v Charles*, 11 AD3d 321 [2004]; *People v Johnson*, 238 AD2d 267 [1997]). That the alleged accomplice neither negotiated nor physically handed the drugs over does not affect his liability as an accomplice (*see People v Kaplan, supra* at 146-147). Moreover, upon the exercise of our factual review power, we are satisfied that the verdict of guilt was not against the weight of the evidence (*see* CPL 470.15 [5]). Schmidt, J.P., Santucci, Luciano and Rivera, JJ., concur.