10-2206-pr
*Epps v. Poole*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2011

(Argued: April 25, 2012

Decided:  June  21, 2012
Amended: August 9, 2012)

Docket No. 10-2206-pr

DARNELL EPPS,

*Petitioner-Appellant,*

v.

THOMAS POOLE, Warden, Five Points Correctional Facility,

*Respondent-Appellee.*

Before: WINTER, WALKER, and CABRANES, *Circuit Judges.*

Appeal from a judgment of the United States District Court for the Eastern District of New York (Raymond J. Dearie, *Judge*) denying petitioner-appellant's petition for a writ of habeas corpus under 28 U.S.C. § 2254. We hold that the Appellate Division of the New York Supreme Court did not unreasonably apply federal law when it determined, as a matter of New York law, that the evidence at petitioner-appellant's trial supported the jury's verdict, convicting him of second degree "depraved indifference" murder.

Affirmed.

> JONATHAN I. EDELSTEIN, Edelstein & Grossman, New York, NY, *for Petitioner-Appellant.*
>
> SETH M. LIEBERMAN, Assistant District Attorney (Charles J. Hynes, District Attorney, *on the brief*, Leonard Joblove, Assistant District Attorney, *of counsel*), Office of the District Attorney, King's County, Brooklyn, NY, *for Respondent-Appellee.*

JOSÉ A. CABRANES, Circuit Judge:

This is the fourth in a series of recent cases to come before us challenging New York State second-degree murder convictions on grounds that the evidence presented to the jury could support only a conviction for intentional murder under N.Y. Penal Law § 125.25(1), and not "depraved indifference" murder under § 125.25(2).[1] *See Garbutt v. Conway*, 668 F.3d 79 (2d Cir. 2012); *Parker v. Ercole*, 666 F.3d 830 (2d Cir. 2012); *Rivera v. Cuomo*, 664 F.3d 20 (2d Cir. 2011). In each of these cases, the petitioner advanced the somewhat perverse argument that he should be released from state custody because the evidence suggests he is in fact *more* culpable than the jury had found him to be. In each case, the New York courts rejected that argument, and in each case, we affirmed the dismissal of the petition for habeas corpus, recognizing that it is not our place to tell New York courts that they do not understand evolving New York law.

The trend continues here. Appealing from a judgment of the United States District Court for the Eastern District of New York (Raymond J. Dearie, *Judge*) denying his petition for a writ of habeas corpus under 28 U.S.C. § 2254, petitioner-appellant Darnell Epps ("petitioner," "Epps," or "Darnell") contends that the evidence at his trial was insufficient to support his conviction for depraved-indifference murder as an accomplice because his brother Darryl, the principal who in fact shot the victim, clearly acted with the intent to kill. The Appellate Division of the New York Supreme Court rejected this argument, holding that, under New York law at the time Epps's

---

[1] New York Penal Law § 125.25(1) provides that "[a] person is guilty of murder in the second degree when: (1) With intent to cause the death of another person, he causes the death of such person or of a third person."

Section 125.25(2) provides that "[a] person is guilty of murder in the second degree when: (2) Under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person."

conviction became final, the evidence was sufficient to support the jury's verdict. *See People v. Epps*, 831 N.Y.S.2d 341 (2d Dep't 2007).

Upon review of the record and the arguments of counsel, we conclude that the Appellate Division's decision was not contrary to, or based on an unreasonable application of, clearly established federal law as determined by the Supreme Court. We therefore affirm the judgment of the District Court dismissing Epps's petition, substantially for the reasons stated by Judge Dearie in his thorough and well-reasoned Memorandum and Order of May 14, 2010. *See Epps v. Poole*, No. 07 cv 3432, 2010 WL 1991517 (E.D.N.Y. May 14, 2010). We write merely to locate this case within the jurisprudence of our Court and that of the New York Court of Appeals.

## Background

In view of Epps's conviction, we recite the pertinent facts in the light most favorable to the verdict. *See, e.g.*, *Garbutt*, 668 F.3d at 80.

In the early morning hours of March 8, 2000, Darnell Epps was sitting in a van parked outside a convenience store when he was informed by an acquaintance, Jesus Plazza, that Derek Warren—who was inside the store with a friend, Randy Jiles—"was calling [Darnell] a pussy." Darnell seemed unperturbed and drove off in the van. Some time later, however, while Warren and Jiles were still inside the store, Darnell phoned the store and asked for Plazza, who was standing outside selling drugs. When Plazza came to the phone, Darnell told him to leave the store "because something might happen, it was not safe there." Plazza and some others left the scene, while Warren, Jiles, another customer named Kenny, and two store employees remained inside.

At approximately 2:30 a.m., Darnell entered the store, followed by his brother, Darryl, who "came in fast." Darryl, brandishing a gun, approached Warren, grabbed him around the neck, and said "I told you to stay out of this store." Warren then "st[u]ck his arm up on the gun" and "[t]he gun [went] off." Darnell instinctually drew his own gun, and pointed it at Jiles. Darryl rapidly fired

3

four more shots into Warren's head and neck. As Darnell later testified, everything "happened so fast" that he did not know whether the first shot was intentionally fired by Darryl or whether the gun had gone off by accident. Although police later confirmed that the only bullets fired came from Darryl's gun, Darryl himself was somehow shot in the encounter.

Darnell turned himself in five days later. He gave conflicting accounts in two written and two videotaped statements, initially telling police that an "older-looking" Latino man had shot Warren, but later admitting that his brother was the shooter and had asked that Darnell "back [him] up." Darnell was charged with one count of second-degree "depraved-indifference" murder, one count of criminal possession of a weapon in the second degree, and one count of criminal possession of a weapon in the third degree, each under an "acting in concert" theory.

After Darryl pleaded guilty to second-degree intentional murder, Darnell was tried before a jury and, on October 11, 2000, found guilty of second-degree depraved-indifference murder; he was acquitted on the weapons possession charges. On November 15, 2000, he was sentenced to an indeterminate term of seventeen and one-half years to life in prison, the same sentence received by his brother.

On appeal, Darnell argued that, because Darryl's actions were intentional and not reckless, the evidence was insufficient to convict Darnell as an accomplice to depraved-indifference murder. The Appellate Division denied the claim as both unpreserved and without merit and affirmed his conviction by order of April 11, 2003. *People v. Epps*, 759 N.Y.S.2d 893 (2d Dep't 2003). Leave to appeal was denied on September 15, 2003, and his conviction became "final" on December 15, 2003. *Cf. Clay v. United States*, 537 U.S. 522, 527 (2003) ("[A] judgment of conviction becomes final when the time expires for filing a petition for certiorari contesting the appellate court's affirmation

4

of the conviction."); [2] S. Ct. R. 13(1) (establishing ninety-day period for filing petition for writ of certiorari). [3]

On June 10, 2003, before Epps's conviction became final, the New York Court of Appeals decided *People v. Hafeez*, 100 N.Y.2d 253 (2003), in which it reversed a depraved-indifference murder conviction based on accomplice liability where the attack on the victim was "quintessentially intentional." *Id.* at 258. Thereafter, Epps moved to vacate his conviction under New York Criminal Procedure Law § 440.10, arguing that *Hafeez* had changed New York's depraved-indifference murder law such that his conviction could no longer be deemed to be supported by the evidence. By decision dated August 1, 2005, the Supreme Court, King's County, denied the motion, concluding that, even if *Hafeez* marked a change in the law, Epps was not entitled to relief. The Appellate Division affirmed, holding that "[e]ven under the standard espoused in *People v. Hafeez*, which was decided after this court rendered its decision and order on the defendant's direct appeal[,] but before his conviction became final, the evidence was legally sufficient to establish the defendant's guilt beyond a reasonable doubt." *People v. Epps*, 831 N.Y.S.2d 341, 342 (2d Dep't 2007) (internal citations omitted).

On August 1, 2007, Epps filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. He argued that, under New York law at the time his conviction became final, the evidence produced at trial was consistent only with an intentional murder and, consequently, insufficient to support his

---

[2] Because the ninetieth day of this period fell on a Sunday, Darnell's conviction in fact became final the next day, December 15, 2003. *See* S. Ct. R. 30.1.

[3] Although the Supreme Court's decision in *Clay* applies specifically to finality for purposes of filing a petition for a writ of habeas corpus under 28 U.S.C. § 2255, it appears the New York Courts apply the same principle for determining the finality of a conviction for purposes of the retroactive application of state law. *See Policano v. Herbert*, 7 N.Y.3d 588, 682 (2006) ("Defendant's conviction became final 90 days later . . . when his time for filing a petition for writ of certiorari in the United States Supreme Court expired.").

conviction for depraved-indifference murder as an accomplice. He also raised a claim of ineffective assistance of counsel. The District Court denied the petition on both grounds. *See Epps v. Poole*, No. 07-cv-3432, 2010 WL 1991517 (E.D.N.Y. May 14, 2010). We granted a certificate of appealability on the sufficiency claim and now affirm the judgment of the District Court.

**Discussion**

We review *de novo* a district court's denial of a petition for a writ of habeas corpus. *See Henry v. Ricks*, 578 F.3d 134, 137 (2d Cir. 2009). The writ may not issue for any claim adjudicated on the merits by a state court unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d)(1)–(2). The state court's findings of fact are presumed to be correct unless the petitioner can rebut this presumption by clear and convincing evidence. *Id.* § 2254(e)(1). The petitioner bears the ultimate burden of proving by a preponderance of the evidence that his constitutional rights have been violated. *Jones v. Vacco*, 126 F.3d 408, 415 (2d Cir. 1997).

In cases challenging the sufficiency of the evidence supporting a state-court criminal conviction, our concern is not with the state courts' application of the state law defining the offense, but rather with the state courts' application of federal law, and, in particular, the sufficiency standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307 (1979). Under this standard, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319.

We therefore review sufficiency challenges to state-court convictions under a "doubly deferential standard of review." *Garbutt*, 668 F.3d at 81. We defer first to the jury's verdict, drawing

6

all inferences in its favor. *See, e.g., United States v. Archer*, 671 F.3d 149, 160 (2d Cir. 2011). Second, we defer to the state courts' rejection of the defendant's constitutional arguments, at least insofar as it did not result from an unreasonable determination of the facts or an unreasonable application of clearly established federal law. *See Garbutt*, 668 F.3d at 81. A third layer of deference applies in cases like this one, where "the state appellate court's assessment of the evidence is intertwined with its interpretation of a complex and evolving body of state law, with which the state courts have far more familiarity than we have." *Id.* at 82.

## I.

Under New York law, a person is guilty of depraved-indifference murder when, "[u]nder circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person and thereby causes the death of another person." N.Y. Penal Law § 125.25(2). In contrast, a person is guilty of intentional murder when "[w]ith intent to cause the death of another person, he causes the death of such person or of a third person." *Id.* § 125.25(1). Both depraved-indifference murder and intentional murder under section 125.25 qualify as "murder in the second degree" and are class A-I felonies under New York law. *Id.* § 125.25.

At the time of Darnell's trial and conviction, the controlling decision on the elements of depraved-indifference murder was *People v. Register*, 60 N.Y.2d 270 (1983). Under the so-called "*Register* regime," in order to convict a defendant on a charge of depraved-indifference murder, a jury was required to find, beyond a reasonable doubt, that the defendant "(1) recklessly engaged in conduct (2) which created a grave risk of death to another person (3) thereby causing the death of another person (4) under circumstances evincing a depraved indifference to human life." *Policano v. Herbert*, 7 N.Y. 3d 588, 602 (2006) (summarizing the law as of June 28, 2001). The *mens rea* for

7

depraved-indifference murder was recklessness, and the statutory phrase "'under circumstance evincing a depraved indifference to human life' defined the factual setting, viewed objectively, in which the risk-creating conduct occurred." *Id.*

In *Policano v. Herbert*, the Court of Appeals described the hallmarks of the *Register* regime as twofold:

> First, even though . . . an attack by its very nature presents compelling circumstantial evidence of intent to cause death, we considered the question of the defendant's state of mind to be a classic matter for the jury. . . .
>
> Second, the factual setting in which the risk-creating conduct must occur, viewed objectively—*Register*'s standard for determining whether there are circumstances evincing a depraved indifference to human life—was fulfilled if a defendant's actions created an almost certain risk of death by, for example, shooting the victim in the head multiple times at close range.

*Id.* at 599–600. Notably, the fact "[t]hat a defendant's acts virtually guaranteed the victim's death did not, in and of itself, preclude a guilty verdict on a theory of depraved indifference." *Id.* at 601. There can be little doubt, therefore, that, under the law as it stood at the time of Darnell's *conviction* on October 11, 2000, the evidence justified the jury's verdict.

Darnell argues, however, that, by the time his conviction became *final*, in December 2003, New York law on depraved-indifference murder had changed such that his conviction was no longer supported by the evidence. It is true that, between the years 2003 and 2006, the Court of Appeals issued a remarkable series of decisions—*People v. Hafeez*, 100 N.Y.2d 253 (2003); *People v. Gonzalez*, 1 N.Y.3d 464 (2004); *People v. Payne*, 3 N.Y.3d 266 (2005); *People v. Suarez*, 6 N.Y.3d 202 (2005); and *People v. Feingold*, 7 N.Y.3d 288 (2006)—that "incrementally pointed the law in a different direction." *Policano*, 7 N.Y.3d at 595 (internal quotation marks omitted). As the Court of Appeals later explained, during this time "one of [the] elements [of depraved-indifference murder]—'under circumstances

8

evincing a depraved indifference to human life'—gradually and perceptibly changed from an objectively determined degree-of-risk standard (the *Register* formulation) to a mens rea." *Id.* at 602–03. Ultimately, in *Feingold*, decided in July 2006, the Court of Appeals reversed *Register* and held that "'depraved indifference to human life' is a culpable mental state." 7 N.Y. 3d at 296. Inasmuch as a finding of indifference to human life (depraved or otherwise) is incompatible with a finding of a specific intent to cause death, Darnell argues that the jury's verdict of October 11, 2000 (which became final on December 15, 2003) cannot be reconciled with the evidence at trial tending to show that his brother, the principal, acted with the specific intent to kill.

However, the New York Court of Appeals has made it abundantly clear that the current understanding of the elements of depraved-indifference murder—under which the *mens rea* is no longer recklessness, but depraved indifference to human life—does not apply retroactively to persons whose convictions became final before the offense was redefined. *Policano*, 7 N.Y.3d at 603–04.[4] Accordingly, the success of Darnell's argument depends upon a determination that the offense was redefined in July 2003 with the Court of Appeals's decision in *People v. Hafeez*, the only one of the cases mentioned above to have been decided before his conviction became final. In *Policano*, the Court of Appeals declined to identify "where along this trajectory a majority of the Court may have effectively passed the point of no return—the limit beyond which, hard as [it] may have tried, it was simply not possible to reconcile [its] developing case law with *Register* and *Sanchez*." 7 N.Y.3d at 604. As we discuss momentarily, deferring to a more recent decision of the Appellate Division of the New York Supreme Court, we do not believe that *Hafeez* marked the "point of no

---

[4] We have similarly held, with reference to New York's evolving jurisprudence on depraved-indifference murder, that "the Due Process Clause does not require the retroactive application of a new interpretation of a criminal statute by the New York Court of Appeals in our collateral review of a conviction." *Henry v. Ricks*, 578 F.3d 134, 141 (2d Cir. 2009).

9

return." We therefore address Darnell's sufficiency claim under the law of New York as stated in *Register* in 1983 and reaffirmed in *Sanchez* in 2002.

First, however, we briefly address an issue that has led to some confusion in this matter: Why should the *principal's* intent dictate the outcome of a case concerning the *accomplice's* mental state?

## II.

Under section 20.00 of the New York Penal Law, "[w]hen one person engages in conduct which constitutes an offense, another person is criminally liable for such conduct when, acting with the mental culpability required for the commission thereof, he solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct." Based on the plain meaning of the statute, it would seem that accomplice liability does not depend on the mental state of the principal, but rather, on the mental state of the accomplice combined with the "conduct" of the principal.[5] As the Court of Appeals held in *People v. Flayhard*:

> Penal Law § 20.00 imposes accessorial liability on an accomplice not for aiding or encouraging another to reach a particular mental state, but rather for intentionally aiding another to engage in *conduct* which constitutes the charged offense while *himself* "acting with the mental culpability required for the commission" of that offense.

72 N.Y.2d 737, 741 (1988) (second emphasis added).[5]

---

[5] In most cases, of course, the "mental culpability required for the commission" of an offense will be consistent with the mental culpability possessed by the principal. That is not necessarily the case with respect to second-degree murder, however, because that offense contains several alternative kinds of "mental culpability," each of which will support a conviction when combined with the defendant's act of "caus[ing] the death" of another under the circumstances specified in the particular subsection charged. *See* New York Penal Law § 125.25(1)–(5).

[5] Indeed, Penal Law § 20.05 states that it is not a defense to accessorial liability that the principal is "not guilty of the offense in question owing to . . . other factors precluding the mental state required for the commission of the offense in question." Furthermore, § 20.15 provides that "when, pursuant to section 20.00, two or more persons are criminally liable for an offense which is

10

However, in *People v. Hafeez*, the New York Court of Appeals stated that a defendant can be convicted for depraved-indifference murder under a theory of accomplice liability "only if he intentionally aided [the] codefendant in commission of the crime and *shared the codefendant's* culpable mental state." 100 N.Y.2d at 258. (emphasis added). Similarly, when this issue was raised at oral argument in the case at bar, both parties agreed that New York law requires proof of a "shared intent" or "community of purpose" between the accomplice and principal, in order to impose accessorial liability on the accomplice.

This language of "shared intent" and "community of purpose" appears to be a relic of case-law construing section 2 of the former Penal Law, which did not contain a *mens rea* requirement. As the New York Court of Appeals explained in 1990, "in order to prevent the imposition of criminal liability for the principal's crime on someone who may have been merely present [without intending to aid in the offense], the courts [construing section 2 of the former Penal Law] required proof that the aider or abettor 'share[d] the intent or purpose of the principal actor.'" *People v. Kaplan*, 76 N.Y.2d 140, 144 (1990) (quoting, *inter alia*, *People v. La Belle*, 18 N.Y.2d 405, 412 (1966) (final alteration in *Kaplan*)). As the Court of Appeals recognized in *Kaplan*, the need for this judge-made requirement was eliminated with the adoption of section 20.00 in the revised Penal Law, but "the 'shared intent or purpose' language from . . . earlier cases [still] appears occasionally even in cases arising under the modern statute." *Id.* at 144–45.

If New York law does not, in fact, require that an accomplice and principal share the same mental state, then the evidence of Darnell's conduct in this case would support his conviction of depraved-indifference murder irrespective of the evidence tending to show that Darryl, the principal,

---

divided into degrees, each person is guilty of such degree as is compatible with *his own* culpable mental state" (emphasis added). These provisions support the view that, under New York law, a defendant is responsible only for his own mental state.

acted with the intent to kill. Nevertheless, given the confusion surrounding this issue and the agreement of the parties that a "shared intent" or "community of purpose" is required, we are hesitant to rest our decision in this case on a contrary understanding of accomplice liability under New York law. Moreover, we conclude that we would reach the same result whether or not New York law requires that the principal and accomplice share the same mental state.

We therefore proceed to address whether, in light of *his brother's* mental state, the evidence adduced at Darnell's trial was sufficient to convict him of depraved-indifference murder under New York law as it stood at the time his conviction became final.

### III.

In its decision affirming the denial of Darnell's motion under New York Criminal Procedure Law § 440.10, the Appellate Division held that, "[e]ven under the standard espoused in *People v. Hafeez*, which was decided after this court rendered its decision and order on the defendant's direct appeal but before his conviction became final, the evidence was legally sufficient to establish the defendant's guilt beyond a reasonable doubt." *People v. Epps*, 831 N.Y.S.2d 341, 342 (2d Dep't 2007) (internal citations omitted). The question for us is not whether, in arriving at that determination, the Appellate Division correctly applied New York law on depraved-indifference murder (including *Hafeez*), but only whether it correctly applied *federal* law requiring sufficient evidence to support a jury verdict on each element of the charged offense. The federal standard, as set forth by the Supreme Court in *Jackson v. Virginia*, is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 319.

As stated above, at the time of Darnell's conviction, in order to convict a defendant of depraved indifference murder, a jury had to find that the defendant: "(1) recklessly engaged in

12

conduct (2) that created a grave risk of death to another person (3) thereby causing the death of another person (4) under circumstances evincing a depraved indifference to human life." *Policano v. Herbert*, 7 N.Y. 3d 588, 602 (2006). Darnell argues, however, that the *Hafeez* decision—which was filed in June 2003, approximately six months before his conviction became "final," *see* note 2, *ante*—signaled a fundamental change in the law of depraved indifference murder. We disagree.

In *Hafeez*, the defendant and a co-defendant targeted the victim in retaliation for an injury the codefendant had sustained in a confrontation with the victim months earlier. On the night of the murder, the defendant and co-defendant lured the victim out of the bar, the defendant pushed him up against a wall, and the co-defendant stabbed him once in the heart. The defendant was convicted as an accomplice of depraved-indifference murder, but the Court of Appeals, affirming the Appellate Division, reversed the conviction, noting that the murder had been plotted for months and that the stabbing was "a quintessentially intentional attack directed solely at the victim." *Hafeez*, 100 N.Y.2d at 258.

We have previously observed in a non-precedential order, and now expressly decide, that "[t]he *Hafeez* court did no more than find, under the particular facts of that case, that there was no evidence that the defendant acted with anything other than intent to kill." *Grant v. Woods*, 313 F. App'x 376, 377 (2d Cir. 2009) (summary order). More importantly (because this is a question of state law), the Appellate Division of the New York Supreme Court has squarely held that neither *Hafeez*, nor the Court of Appeals's subsequent decision in *Gonzalez*, marked the "point of no return" abrogating the prior law of the "*Register* regime." *People v. Baptiste*, 853 N.Y.S.2d 719, 721–25 (3d Dep't 2008). Rather, the Appellate Division has held that "the law changed on October 19, 2004, when the Court [of Appeals] decided *People v. Payne*." *Id.* at 720.

The question of when New York law changed is, of course, a question for the New York courts. We are "bound to apply the law as interpreted by [the] state's intermediate appellate courts

13

unless there is persuasive evidence that the state's highest court would reach a different conclusion." *V.S. v. Muhammad*, 595 F.3d 426, 432 (2d Cir. 2010). *See generally Comm'r Int. Rev. v. Estate of Bosch*, 387 U.S. 456, 465 (1967). We see no such evidence here. On the contrary, we note that the Appellate Division's decision in *Baptiste* was thorough and well-reasoned and answered a question that had been expressly left open by the Court of Appeals.[6] It appears, moreover, that the *Baptiste* decision did not meet with the disapproval of the Court of Appeals, which denied Baptiste's application for leave to appeal. *See People v. Baptiste*, 10 N.Y.3d 932 (June 13, 2008) (Table). Because we do not believe that the Court of Appeals would reach a different conclusion than that reached in *Baptiste*, we defer to the determination of the Appellate Division that *Hafeez* was not an abrogation of the *Register/Sanchez* standard, but rather, merely an application of that standard to the facts of the particular case.[7]

Accordingly, at the time Darnell's conviction became final (on December 15, 2003, *see* note 2, *ante*), the *mens rea* element of depraved-indifference murder was still "recklessness" and the phrase "under circumstances evincing a depraved indifference to human life" merely defined the factual setting in which the risk-creating conduct occurred. *See Policano*, 7 N.Y.3d at 602; *see also People v. Sanchez*, 98 N.Y.2d 373, 380 (2002) ("[T]he crux of murder under Penal Law § 125.25(2) is recklessness exaggerated by indifference to the circumstances objectively demonstrating the enormity of the risk of death from the defendant's conduct."). On the record before us, we cannot

---

[6] We find it important that the Court of Appeals in *Policano* merely declined to identify "the point of no return," 7 N.Y.3d at 603; it did not hold that there was no such identifiable point.

[7] Our decision in *Henry v. Ricks*, 578 F.3d 134 (2d Cir. 2009), is not to the contrary. In *Henry*, the petitioner urged us to conclude that the line of New York Court of Appeals cases from 2003 to 2006 did *not* mark a change in the law, but, rather, clarified the law as it existed at the time his conviction became final, in 2000. *See id.* at 136. We rejected that argument, noting that the Court of Appeals in *Policano* "explained that the recent decisions marked a change in the law that did not apply retroactively." *Id.* at 138. This observation does not constitute a holding that the change in the law occurred with *Hafeez*, the first case in the line, as would be necessary to support Epps's claim here. On the contrary, the Court of Appeals made clear in *Policano* that it was not deciding when, precisely, the "point of no return" was reached. 7 N.Y.3d at 604.

14

conclude that *no* rational trier of fact could have found that Darnell Epps—or his brother—acted recklessly, under factual circumstances evincing a depraved indifference to human life, and not with the intent to kill.

As the District Court observed, a rational juror hearing the evidence in this case could have found that Darryl did not go into the store intending to kill Warren, but instead recklessly brandished his gun to threaten Warren. *See Epps*, 2010 WL 1991517, at *6. As Darnell Epps himself testified at his trial, the victim (Warren) "st[u]ck his arm up on the gun," and there followed a "quick hand action and a shot went off." Darnell testified that everything "happened so fast," and indeed, it appears that the encounter was so frenetic that Darryl somehow shot himself. In contrast to *Hafeez*, the evidence in this case did not compel the conclusion that the victim was specifically targeted and his death plotted in advance.

Although the fact that Darryl shot Warren several times in the head and neck was certainly "compelling circumstantial evidence of an intent to cause death," *Policano*, 7 N.Y.3d at 599, it is not dispositive. Under the law of *Register* and *Sanchez* (which was not abrogated by *Hafeez*) "the question of the defendant's state of mind [was considered] to be a classic matter for the jury," and a conviction for depraved-indifference murder could be sustained even "if a defendant's actions created an almost certain risk of death by, for example, shooting the victim in the head multiple times at close range." *Policano*, 7 N.Y.3d at 600. As the District Court held, "petitioner's case is 'squarely within the then-established rule that a . . . depraved indifference murder count [] could be submitted to the jury unless there was 'absolutely no evidence whatsoever that the defendant might have acted unintentionally.'" *Epps*, 2010 WL 1991517, at *6 (quoting *Grant*, 313 F. App'x at 377 and *Policano*, 7 N.Y.3d at 601).

The Appellate Division's holding that the evidence in the trial of Darnell Epps supported his conviction of depraved-indifference murder was thus not contrary to, or an unreasonable application

15

of, clearly established federal law as expounded by the Supreme Court. Viewing the evidence in the light most favorable to the verdict, and deferring to the New York courts on the question of what elements need to be proved to support a conviction for depraved-indifference murder, we cannot conclude that *no* rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319; *cf. Rivera v. Cuomo*, 664 F.3d 20, 21–22 (2d Cir. 2011) ("[A]lthough evidence of 'significantly heightened recklessness' was slim, at best, giving the state courts and the jury the utmost deference, we cannot find that the evidence was *so* completely lacking that *no* rational jury could have found Rivera guilty of depraved indifference murder." (internal citation omitted)).

## CONCLUSION

We hold that, in concluding that the evidence at trial supported the conviction of Darnell Epps for depraved-indifference murder as a matter of *state* law as understood at the time the conviction became final (December 15, 2003), the Appellate Division, Second Department, did not unreasonably apply *federal* law. Accordingly, we **AFFIRM** the judgment of the District Court denying Darnell Epps's petition for a writ of habeas corpus.

16