Sanchez v. Lee

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 25th day of January, two thousand thirteen.

PRESENT:

John M. Walker, Jr.,
Robert A. Katzmann,
Debra Ann Livingston,
            <u>Circuit Judges</u>.

-----------------------------------------X

STEVEN SANCHEZ,

            <u>Petitioner-Appellant</u>,

        - v. -                          No. 11-3617-pr

WILLIAM LEE, Superintendent, Green Haven Correctional Facility,

            <u>Respondent-Appellee</u>.

-----------------------------------------X

FOR APPELLANT:              MATTHEW L. MAZUR (Benjamin E. Rosenberg *on the brief*), Dechert LLP, New York, NY; Richard M. Greenberg, Office of the Appellate Defender, New York, NY, *for* Petitioner-Appellant.

FOR APPELLEE:                         JUSTIN J. BRAUN, Bronx County
                                      District Attorney's Office, Bronx,
                                      NY, *for* Respondent-Appellee.

Appeal from a judgment of the United States District Court for the Southern District of New York (P. Kevin Castel, Judge).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the district court's judgment is **AFFIRMED**.

Steven Sanchez appeals from the district court's denial of his petition for habeas corpus following his conviction of depraved indifference murder.  Sanchez argues that despite the fact that his motion is procedurally barred because he failed to preserve a legal insufficiency argument in the state courts, that this Court should find that he is "actually innocent" of depraved indifference murder and therefore consider his legal sufficiency argument on the merits.  The district court, adopting a magistrate judge's report and recommendation, held that Sanchez could not meet the requirements for "actual innocence" and denied his petition.  See Sanchez v. Lee, 2011 WL 3477314, No. 10-cv-7719 (S.D.N.Y. Aug. 8, 2011).

The following evidence was presented against Sanchez at trial.  At approximately 4 a.m. on July 13, 2002, Sanchez called his girlfriend Jessica Herrera to tell her to come to his mother's house.  She agreed.  After 45 minutes, when Herrera did not arrive, he tried to call her repeatedly, finally reaching her

-2-

after 6 a.m. Herrera told Sanchez that she was at a friend's house, but on her way to his mother's home. Herrera and a friend then got into the backseat of a four-door sedan driven by Gregory Bright with Jason Maldonado in the passenger seat. Bright drove them to an intersection of the street where Sanchez's mother's house was located.

Sanchez called Herrera from his mother's while she was in the car, telling her that he was upset and angry with her for not coming over when she said she would. He decided to wait for her outside. Sanchez didn't feel safe outside without protection, in part due to his cousin's murder during a confrontation over a girl and because he had been stabbed some years earlier. Before leaving the house, he went to the kitchen and placed the "biggest knife" he could find in his jeans pocket for protection. When Herrera arrived, Sanchez and Herrera started yelling at one another, and Sanchez at one point covered her mouth with his hand, but the testimony differs about what happened next. Maldonado got out of the car. Bright testified that Maldonado started to throw a punch, but then "arched a little bit" and then sat back in the passenger seat. He told Bright to take him to the hospital because he had been stabbed. Herrera testified that Maldonado, after Sanchez put his hand over Rivera's mouth, asked Sanchez "what the fuck are you doing?" and started fighting with Sanchez. According to Herrera, the two men scuffled, then

-3-

stopped suddenly, at which point she could see a knife in the side of Maldonado's abdomen.  Sanchez testified that Maldonado got out of the car and asked "Yo son, what the fuck you doing?"  When Maldonado punched him, Sanchez testified that he tried to cover himself and then felt a second person hitting him.  He said that he experienced flashbacks to the time he had been stabbed, so took out the knife and waved it around to scare the men away when he felt them both on top of him.  Sanchez said that Maldonado "kept on towards me, so as he kept on . . . I stabbed him."  Maldonado later died at the hospital.  The Medical Examiner determined that Maldonado suffered a single "V-shaped" stab wound that could have resulted from twisting of the knife or from Maldonado swinging his arm as he was stabbed.

Sanchez was indicted and charged with intentional murder and depraved indifference murder under New York Penal Law §§ 125.25 (1) and (2).  The *mens rea* required to convict a person of depraved indifference murder was different at the time of Sanchez's trial than it is now.  Sanchez was convicted on March 17, 2004, under the *mens rea* standard articulated in People v. Register, 60 N.Y.2d 270 (1983).  A recent opinion by this court summarized the Register requirements:

> Under the so-called "Register regime," in
> order to convict a defendant on a charge of
> depraved-indifference murder, a jury was
> required to find, beyond a reasonable doubt,

-4-

that the defendant "(1) recklessly engaged in conduct (2) which created a grave risk of death to another person (3) thereby causing the death of another person (4) under circumstances evincing a depraved indifference to human life." Policano v. Herbert, 7 N.Y.3d 588, 602 (2006) (summarizing the law as of June 28, 2001). The *mens rea* for depraved-indifference murder was recklessness, and the statutory phrase "'under circumstances evincing a depraved indifference to human life' defined the factual setting, viewed objectively, in which the risk-creating conduct occurred." Id.

Epps v. Poole, 687 F.3d 46, 51 (2d Cir. 2012). In a series of cases between 2003 and 2006, including People v. Hafeez, 100 N.Y.2d 253 (2003), People v. Gonzalez, 1 N.Y.3d 464 (2004), People v. Payne, 3 N.Y.3d 266 (2004), People v. Suarez, 6 N.Y.3d 202 (2005), and People v. Feingold, 7 N.Y.3d 288 (2006), the law incrementally changed, and in Feingold, the New York Court of Appeals overturned the rule in Register by changing the *mens rea* requirement from recklessness to depraved indifference to human life. See Epps, 687 F.3d at 51-52.

The substance of New York's depraved indifference murder law is not at issue in this case, which focuses instead on petitioners' procedural rights to federal habeas review. This court reviews a district court's denial of a habeas corpus petition de novo. Hawthorne v. Schneiderman, 695 F.3d 192, 195 (2d Cir. 2012). On appeal, Sanchez does not argue that he

-5-

properly preserved his legal insufficiency argument in the state court system; rather, he asserts only that his case falls in the small group of cases to which an equitable exception for "miscarriage of justice" applies.

In most cases, a petitioner who is procedurally barred from making a legal insufficiency argument in state court must show "cause" for and "prejudice" from the procedural default in order to obtain federal habeas review of a defaulted constitutional claim.  See Wainwright v. Sykes, 433 U.S. 72, 87 (1977). Although "for the most part, 'victims of a fundamental miscarriage of justice will meet the cause-and-prejudice standard,' . . . where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Murray v. Carrier, 477 U.S. 478, 496 (1986) (internal citations omitted).

Establishing actual innocence is not easy.  "To establish actual innocence, petitioner must demonstrate that, 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.'"  Bousley v. United States, 523 U.S. 614, 623 (1998) (quoting Schlup v. Delo, 513 U.S. 298, 327–28 (1995)).  Actual innocence requires "factual innocence, not mere legal insufficiency." Id.  A claim of actual innocence "is

-6-

not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits."  Herrera v. Collins, 506 U.S. 390, 404 (1993).

For the purposes of this order, we assume without deciding that Sanchez's procedural default could be excused.  Even with this assumption, however, Sanchez cannot make out a valid legal insufficiency claim.[1]  In cases challenging the sufficiency of the evidence of a state-court criminal conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319 (1979).  On the trial record, a rational trier of fact could have found Sanchez guilty of depraved indifference murder under the Feingold standard.  Before going outside to wait for Herrera, Sanchez chose the "biggest knife" he could find in his mother's kitchen.  Although there is no evidence that Maldonado or Bright had any weapons, Sanchez pulled out the knife and "blindly waved" it in their direction.  He did not deliberately stab Maldonado in the heart or another location more likely to cause death, but

---

[1]  Sanchez contends that the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply in this case.  Since we conclude that Sanchez's claim fails even without applying § 2254(d), we need not reach the issue.

-7-

instead stabbed him in the side, creating a wound several inches deep.  After the stabbing, Sanchez did not pursue Maldonado to stab him further to try to kill him, but instead fled first to his mother's house, then to a friend's house, before returning and being arrested.  As in this Court's recent decision in Gutierrez, "a reasonable jury could conclude that [Sanchez] wielded his knife haphazardly, without intending to kill anyone, but nevertheless indifferent as to whether he inflicted fatal injuries." Gutierrez v. Smith, 2012 WL 6123764, No. 10-4478 (2d Cir. Dec. 11, 2012), at *9.

For the foregoing reasons, the district court's judgment is **AFFIRMED.**

                              FOR THE COURT:
                              Catherine O'Hagan Wolfe, Clerk of Court